SCHUMAN *v.* STEVENSON.

4-8852                                        219 S. W. 2d 429

Opinion delivered April 11, 1949.

*Wm. J. Kirby* and *U. A. Gentry,* for appellant.

*House, Moses & Holmes,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Manie Schuman, owns four vacant lots in Springdale Addition to the City of Little Rock, Arkansas. The lots are 50 feet wide and 100 feet long and face south on "O" Street. In the latter part of 1945 appellees, Redding Stevenson and George Wittenberg, operating as S & W Development Co. constructed a sewer line running east and west across the north end of appellant's lots about 30 or 35 feet south of the north lot lines. The sewer line was

constructed to serve a residential area being developed by Stevenson & Wittenberg and connected· with the city's line west of appellant's property. The line was built across appellant's lots without his knowledge or consent and by mistake, it being the intent to place the line in the alley to the north.

Appellant learned of the construction of the line shortly before its completion. He testified that when he first discovered the work being done, about five feet of pipe remained uncovered on his lots; that a few days later he made complaint to appellee Wittenberg, who told him that the line might be about ten feet over on appellant's lots, but it would enhance the value of the lots and appellant could connect any buildings he might construct on the lots to the line; that he neither .agreed nor disagreed to what Wittenberg told him; and that he knew at the time of the conversation that the line was on his lots, but did not know its exact location. He made no further complaint until the spring of 1948 when he learned that the F.H.A. would not approve a loan for the construction of a home on the property because of the location of the sewer line.

Appellee Wittenberg testified that at the time appellant first complained of the construction of the line there was no express agreement as to whether the line should remain or be moved, but that he and appellant had a friendly understanding that appellant's lots would be cleared· off to his satisfaction and that appellant would be permitted to connect any future construction on the lots to the sewer line. He also testified that at the time of his conversation with appellant, construction of the sewer had been completed with the exception of some finishing work west of appellant's lots where some of the pipe had not been covered and some leveling off of. the ditch that remained to be done; that it was a year or 18 months after this conversation when appellant's son-in-law made complaint about the location of the line and his inability to secure a loan from the F.H.A.

Mr. Wittenberg also stated that in order for appellant to have sewer connections before the line was built, he would have had to build his own line for a distance

of from 750 to 1,000 feet, which would have been extremely expensive and that the presence of the line in controversy enhanced the value of appellant's lots.

After the sewer line was completed by Stevenson & Wittenberg, it was transferred to appellee, Little Rock Sanitary Sewer Committee, for operation and maintenance under an arrangement whereby the committee charged a fee to property owners connecting with the line to reimburse the builders.

Appellant filed this suit on May 28, 1948, seeking a mandatory injunction to require appellees, Stevenson & Wittenberg, to remove the sewer line from appellant's property.

In their answer appellees pleaded the execution of an oral agreement for an easement based upon a valuable consideration; that said agreement was relied on by appellees; and that appellant stood by for approximately two years thereafter without objection, knowing that appellees would expend large sums of money to complete the sewer, and thereby acquiesced in completion of the line, at additional expense, which conduct on the part of appellant created an equitable estoppel barring him from the relief sought.

Appellant filed a reply to the answer pleading the statute of frauds as a defense to the alleged oral agreement for an easement.

After trial a decree was rendered in favor of appellees and the complaint of appellant was dismissed for want of equity.

There is little dispute in the evidence which shows that the sewer line was placed upon appellant's lots by mistake and without his knowledge or consent, but that as construction was nearing completion, appellant tacitly agreed that the sewer line might remain on his lots in consideration of appellees' promise to clear and level the lots and the further right of appellant to connect with the sewer line free of the usual charge, if houses were later constructed on the lots.

For reversal of the decree appellant contends that the right to construct and maintain the sewer line, or the oral agreement to allow it to remain on his land, constituted an easement which could not be consummated except by deed and that the oral agreement, if made, amounted to a mere license which was revocable at will.

It is appellees' contention that appellant, by his words and conduct, granted an easement in the nature of an executory contract which was in effect a future grant of an easement fully performed, and thereby taken out of the operation of the statute of frauds; also that appellant is estopped by his own conduct from asserting his right to revoke the oral agreement.

Both parties rely on the early case of *Wynn* v. *Garland,* 19 Ark. 23, 68 Am. Dec. 190, which has been frequently cited in this and other jurisdictions. There the owners of unsurveyed adjoining lands orally agreed to dig ditches for the purpose of draining their lands and constructed a main ditch as a boundary line between them. Later the lands were surveyed by the government and one of the parties closed the ditch in violation of the oral agreement and threw up an embankment so as to back the water upon the land of the other party. It was held that the agreement between the parties was in the nature of a license which, having been accepted and acted upon, could not be disregarded; that full performance on the part of plaintiff made it an executed contract; and that defendant had no right to close the ditch. It was there said: "An easement, in contradistinction to a *simple* or *voluntary license,* is defined to be, a liberty, privilege, or advantage, which one man may have in the lands of another without profit, and it may arise by deed or prescription. . . .

"From this definition of an easement it follows, therefore, that it can only be communicated by deed, or other instrument in writing, or by prescription, and as a consequence, unless it be claimed by prescription, the privilege, under the statute of frauds, must be evidenced by deed, or some other writing. . . .

"Notwithstanding the grant of an *easement* is embraced within the operation of the statute of frauds,

and therefore must be in writing, yet it has been holden, that a parol grant executed will be upheld and sustained under the same circumstances, and on the same principle, that a parol contract for the sale of land would be. . .

"Besides this, where there has been given a parol license of a privilege amounting to an easement, and where the enjoyment of it must necessarily be preceded by the expenditure of money or capital, or where the grantee has made improvements, in good faith, under the grant, or invested his capital in consequence of it— under these circumstances the grantee becomes a purchaser of the easement granted by parol for a valuable consideration, and consequently will be entitled to have it specifically performed in equity, unless the party will re-imburse him in his expenditure, or pay him for his improvements, provided this will put the grantee *in statu quo.* See *Sheffield* v. *Collier,* 3 Kelly (Ga.) Rep. 84 *et seq., and the cases cited above.*" See, also, *Walker* v. *Shackleford,* 49 Ark. 503, 5 S. W. 887, 4 Am. St. Rep. 61; *Belser* v. *Moore,* 73 Ark. 296; 84 S. W. 219; *Allison* v. *Schweitzer,* 144 Ark. 123, 221 S. W. 454.

Appellees also rely on the case of *Allison* v. *Schweitzer, supra,* where, pursuant to oral permission given by appellant, appellee built a wall two inches over the dividing line so as to touch appellant's wall, and appellant stood by with knowledge that appellee was expending money and labor in the erection of the wall in reliance on the oral agreement. The court said: "Upon the merit of the case, it may be said that the question presented is not that of the enforceability of an executory parol contract for an easement. Appellee is in possession of the land in dispute, and the question is, 'Can appellant be heard to say that no easement exists?' In 9 R. C. L., at page 746, it is said: 'It is recognized, however, that, though a grant of an easement is embraced within the operation of the statute (of frauds), and must, therefore, be in writing, yet a parol grant executed will be upheld and sustained under the same circumstances and on the same principle that a parol contract for the sale of land would be.' Among the numerous cases cited in the note to the text quoted are our own

cases of *Wynn* v. *Garland,* 19 Ark. 23, 68 Am. Dec. 190, and *Walker* v. *Shackelford,* 49 Ark. 503, 5 S. W. 887, 4 Am. St. Rep. 61. See, also, *Salyers* v. *Legate,* 93 Ark. 606, 125 S. W. 1010, 137 Am. St. Rep. 107; *Rudisill* v. *Cross,* 54 Ark. 519, 16 S. W. 575, 26 Am. St. Rep. 57.''

The facts in the case at bar do not bring it within the principles announced in the above cases. Appellees built the sewer across appellant's land without his knowledge or consent. They entered upon the lots as a trespassers and not in reliance upon any agreement with appellant, oral or written. The construction of the sewer and the expenditures by appellees were not made under a parol grant with the knowledge and consent of appellant. It is true that appellant reneged on the oral agreement he tacitly made for the sewer to remain on the lots after learning of the trespass, but the outlay of money in construction of the sewer occurred prior to the agreement and not as an inducement thereto. While appellees alleged in their answer that they expended large sums of money to complete the sewer after appellant impliedly agreed that it might remain on his property, there was a failure of proof to substantiate this allegation. The effect of the candid testimony of appellee Wittenberg is that the construction was nearing completion at the time of the agreement and only a small amount of work was done thereafter.

The facts here, considered in their aspect most favorable to appellees, show an oral agreement amounting to a mere license to allow the sewer to remain on the land of appellant after the work had been substantially completed. There is considerable division among the authorities as to whether a parol license to do an act on the land of the licensor remains at all times revocable at his option, or whether such license becomes irrevocable where the licensee has entered under the parol license and expended money or labor with the knowledge and acquiescence of the licensor. 33 Am. Jur., Licenses, §§ 103 to 105. At § 103 the textwriter says: ''The cases holding to this rule as to irrevocability of certain licenses proceed on two distinct theories, one theory being that when the licensee expends large sums of money in making

the improvement, and such expenditure is made without opposition by the licensor, the license becomes executed and, as such, irrevocable; and that, in fact, what was at its inception a license becomes in reality a grant. The other theory and the reason most frequently given is that after the execution of the license, it would be a fraud on the licensee to permit a revocation; and the principles of equitable estoppel are invoked to prevent what would work a great hardship in many instances. This is especially true where a licensor not only grants the right to the licensee to go on his land but joins in the enterprise and accepts the benefits of the licensee's labor and expense.

"Of course, where there has been no expenditure on the faith of the license, there is no foundation for an estoppel, and the same reason does not exist for holding it irrevocable, even though it is executed. . . . The rule of irrevocability will not apply to a mere naked license predicated on an invasion of another's right, and which is in effect a trespass on his property; and this is true even when money has been expended in improving the property, under a belief that the uninvited use relied on will never be interrupted." See, also, Anno. 49 L. R. A. 497.

The rule of irrevocability finds support in *Wynn* v. *Garland, supra,* but, as previously pointed out, the entry and expenditures in the instant case were not made under and on the faith of the license, and support for the doctrine of estoppel is, therefore, lacking. Before a party will be estopped, it must be shown that the party relying upon estoppel is put at disadvantage by the action of the party sought to be estopped and has been thereby led to change his position for the worse. *Fox* v. *Drewry,* 62 Ark. 316, 35 S. W. 533; *Norton* v. *Maryland Casualty Co.,* 182 Ark. 609, 32 S. W. 2d 172. The case of *Pocahontas Light & Water Co.* v. *Browning,* 53 W. Va. 436, 44 S. E. 267, involved facts similar to those here and the court held: "A representation, admission, or act after the party's position has been changed will not avail as grounds for estoppel, because it cannot have been acted on."

We, therefore, hold that the license for the sewer to remain on the premises is revocable by appellant, but this does not necessarily mean that he is entitled to the extraordinary remedy of a mandatory injunction against appellees, Stevenson & Wittenberg, for removal of the line from appellant's property. The proof shows that after appellant impliedly agreed for the sewer to remain on his property, it was turned over to appellee, Little Rock Sanitary Sewer Committee, a public agency charged with the operation and maintenance of the sewer, and placed in use. Other owners in the vicinity have doubtless connected their properties with the line, and it is not shown whether the line can be removed from appellant's lots without serious inconvenience, expense and disruption of service to these owners.

Equity should refuse to issue a mandatory injunction, even though an admitted legal right has been violated, where it appears that the intervening rights of the public should be considered and the issuance of the injunction would cause serious public inconvenience or loss without a correspondingly great advantage to the person seeking it. If such is the situation here—and the proof on this phase of the case has not been fully developed—appellant should be relegated to his remedy for damages resulting from the construction of the sewer on his premises.

The decree is accordingly reversed, and the cause remanded with directions to the trial court to determine whether a mandatory injunction should issue and, if not, to proceed with the determination of the damages, if any, sustained by appellant by reason of the construction of the sewer on his property.