GRAVES v. WIMPY.

5-3126                                        372 S. W. 2d 812

Opinion delivered December 9, 1963.

McDaniel, Ward & Mooney, for appellant.

Penix & Penix, for appellee.

FRANK HOLT, Associate Justice. The appellant and appellee are rice farmers and adjoining landowners. The appellant constructed a dam across a drainage ditch which was serving both appellant and appellee. Appellant claims this was necessary to prevent indigo-laden waters from flowing into this drainage ditch and damaging his rice crops. This dam diverted the flow of water upon appellee's lands. Appellee cut the dam thus permitting the flow of water to again enter the jointly used drainage ditch. Appellant brought this action to require appellee to restore the breached dam; to enjoin him from such future conduct; and for the recovery of damages to his rice crops. The appellee responded that the ditch is a joint or community ditch; that the appellant should be enjoined from maintaining the dam resulting in the overflow of appellee's lands; and, also, sought recovery for damages to his crops.

The Chancellor held that appellant had no right to dam up this drainage ditch and denied damages to both parties. From that decree appellant brings this appeal.

For reversal appellant first contends that the decree of the trial court is against the preponderance of the competent evidence. Since appellant's Exhibit "A" is agreed to be a reasonably accurate portrayal of the reference points involved in this case we reproduce it for use in our discussion of the facts.

370

PLTF'S EX. "A"

LAKE — INDIGO

FRIERSON 13-13-3

WIMPY 14-13-3

WIMPY 23-13-3

Graves 24-13-3

The appellee, Wimpy, has owned his property since 1949 and the appellant, Graves, has owned his 320 acres since 1952. As indicated by the reproduced exhibit, the appellant and appellee have a common boundary line running north and south. To the north of appellant Mr. Frierson is an adjoining landowner. Appellee's property extends northward and is contiguous to the Frierson property. On the Frierson property is an artificial lake which is infested with indigo. This is a noxious weed which is injurious to rice farming. In 1959 and in January 1962 Frierson drained his lake. The drainage flowed from Point "C" to Point "B" and thence to Point "A" into the drainage ditch used jointly by appellant and appellee. Appellant registered his complaint in 1960 and in July 1962 appellant dammed up the common drainage ditch at Point "A" to prevent the further drainage or flow of this indigo-infested water from the lake, or from "B" to "A", into this ditch. This caused

the waters to be diverted upon appellee's lands. In December 1962 appellee opened up this dam resulting in this lawsuit.

Shortly after appellant acquired his property in 1952 he dynamited a ditch at about Point "A" on appellee's property for the purpose of releasing or draining water from appellant's land, thus making his land tillable. According to the appellant, he and the appellee "got together" and dug the present ditch in 1954 from Point "A" southward for approximately a mile along their common boundary. Appellant admits they did not know the exact location of their boundary line at that time, although he now claims the joint ditch is on his property except the southern part thereof. When this joint ditch was first constructed it was turned ninety degrees at the south end and then dug westward for one-half mile entirely across appellee's lands to link up with the Mattix drainage ditch which was a part of the drainage system in this area that had existed for many years. In 1955 appellee widened this joint ditch, except the northern portion of it, for approximately three-quarters of a mile. In 1958 this one-mile-long joint drainage ditch between appellant and appellee was reworked. Appellant and appellee each applied for and received a subsidy from the federal government for this ditching program. However, the signed applications for the cost-sharing of the ditch work did not include ditch work north of Point "A".

Mr. Ratliff, local office manager for the U. S. Soil Conservation Service since 1949, testified that he knew both parties to this suit and that they made separate applications to his office for a government subsidy in reworking this joint ditch on a cost-sharing basis. These applications were approved and the subsidies were paid. According to the government regulations the cost-sharing is conditioned upon proper maintenance by the recipient of the work subsidized. He testified that he was familiar with the "practices" according to these regulations and that the appellant and appellee agreed to them.

Mr. Neff, a local engineer for the U. S. Soil Conservation Service since 1940, studied the lands in the area

and designed the reworking of this ditch for the purpose of providing drainage for a total of 560 acres. This area included drainage from some of the lands of appellant, appellee, Frierson and his lake. The size of the reworked ditch was determined by the size of this drainage area [560 acres] and fall of the land.

When the contractor completed the reworking of the ditch northward to Point "A" then appellee, at his own expense, had the contractor to continue from Point "A" northward to Point "B" for a distance of approximately sixty feet along the boundary between appellee and Mr. Frierson. Appellant contends that he never gave appellee permission to connect onto their joint ditch at Point "A" and registered repeated objections which is denied by appellee.

It is well settled that a decree of the Chancery Court will not be reversed on appeal unless contrary to the preponderance of the evidence. *Hill* v. *Barnard,* 216 Ark. 29, 224 S. W. 2d 31. Upon a review of the evidence in the case at bar we find it ample to support the Chancellor's finding.

The parties, by their joint action, established a ditch in 1954 at which time it appears neither of them knew the exact location of their common boundary line. In 1955 the appellee widened a large portion of this ditch. In 1958 appellant and appellee each applied for and accepted a Soil Conservation subsidy payment according to the terms of which they agreed to carry out the Soil Conservation "practices" or program. The drainage area being served by this "practice" was 560 acres which included lands of appellant, appellee, Frierson and his lake.

We think that appellant and appellee each have a right, in the nature of a license, to the unobstructed use of this community ditch. We recognized such a right in the early case of *Wynn* v. *Garland,* 19 Ark. 23 (1857). In that case the owners of unsurveyed adjoining lands orally agreed to dig ditches for the purpose of draining their lands and constructed a main ditch as a boundary

line between them. Later the lands were surveyed by the government and one of the parties closed the ditch in violation of the oral agreement and threw up an embankment so as to back the water upon the land of the other party. We held that the oral agreement between the parties was in the nature of a license which, having been accepted and acted upon, could not be disregarded and there was no right for either to close the ditch. See, also, *Schuman* v. *Stevenson,* 215 Ark. 102, 219 S. W. 2d 429, which cites the Wynn case and reaffirms its principles.

In the case at bar it is undisputed that the ditch southward from Point "A" was jointly constructed and used by the appellant and appellee from 1954 until 1962 as a part of the drainage system. The construction and maintenance of this common ditch necessitated the expenditure of labor and capital by both. This improvement of the drainage system in this area was accepted and acted upon by both parties in their farming operations.

There is, also, compelling testimony in this case that there was a natural flow to the south from Point "B" to Point "A" and that there had been a ditch or slough carrying water southward in this general vicinity for many years. We think it is significant that, according to appellant's Exhibit "A", the natural flow in the 1951 ditch is southward to Point "B". The artificial ditch from Point "B" to Point "A" is in substantially the same location as the natural drainage and, thus, did not materially change the natural course of the water. *Boone* v. *Wilson,* 125 Ark. 364, 188 S. W. 1160. At common law the waters of a natural stream cannot be obstructed by a lower proprietor so as to cause it to flow in another direction to the detriment of landowners above and about him. *Monteith* v. *Honey,* 135 Ark. 407, 205 S. W. 812.

We also think that appellant is estopped from having any right to erect the dam in question since the ditch to the north of it has been used by the appellee as part of a drainage system for four years. The appellant cites *Vesper* v. *Woolsey,* 231 Ark. 782, 332 S. W. 2d 602, to the effect that in the absence of "intervening equity"

laches will not apply to shorten the statutory period of limitations. We think there were intervening equities in this case. By agreement the joint ditch between appellant and appellee was constructed in 1954, reworked by appellee in 1955, and reworked in 1958 through the efforts of both of them. Also, that portion of the drainage ditch in controversy, from Point ''A'' to Point ''B'', was constructed by appellee at his own expense in 1958 and used continuously by him as a part of a drainage system until appellant constructed the dam four years later. In *Stewart* v. *Pelt,* 198 Ark. 776, 131 S. W. 2d 644, we quoted with approval as follows:

''Since laches is generally regarded as being not delay alone, but rather delay working a disadvantage to another, it is evident that there is and can be no fixed or determinate rule for the application of the doctrine, no exact time, to an hour, a minute, or a year, within which a party's claim to relief, or assertion of a right, is barred by lapse of time, but each case must depend on its own peculiar circumstances. In other words, the question is addressed to the sound discretion of the court. Nor in determining whether a claim is stale is the court confined to the statutory period, but may refuse relief in cases where the delay is less or greater than that named in the statute.''

See, also, *Sanders* v. *Flenniken,* 180 Ark. 303, 21 S. W. 2d 847; 30 C.J.S., Equity, § 112.

Under the facts in the instant case we think that appellant's delay in asserting any right he might have had now operates as a species of estoppel against the assertion of any such right.

The appellant next urges for reversal that the trial court erred in admitting the testimony of Mr. Neff and Mr. Ratliff and the exhibits to their testimony. The testimony of Mr. Neff and Ratliff as experienced employees of the Soil Conservation Service related to their knowledge of the ''practices'' or program of that government agency and the business records and publications

of their offices. Ark. Stat. Ann. § 28-930 (Repl. 1962) provides:

"Federal departmental or agency documents admissible.—Books, records, reports, minutes of proceedings, and other documents of any department or agency of the United States kept, maintained or made in the performance of duties prescribed by law, or parts thereof or excerpts therefrom, shall be admissible in the courts of this State to prove the Act, transaction, event, or occurrence which the memorandum, report, record or other document records, reflects or shows. Provided, the contents of the books, records, reports, minutes of proceedings, and other documents are material and relevant. [Acts 1949, No. 293, § 3, p. 862.]"

We think that without the testimony of Neff and Ratliff the evidence is sufficient to sustain the Chancellor's decree. However, we consider that their testimony and the exhibits thereto are material and relevant to the issue in the case at bar and are, therefore, properly admissible.

Affirmed.

JOHNSON, J., dissents.