CITY OF EL DORADO *v.* MCHENRY.

5-3520                                   388 S. W. 2d 554

Opinion delivered April 5, 1965

*J. V. Spencer, Jr.,* for appellant.

*Crumpler & O'Connor, Jerry M. Watkins,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, City of El Dorado, owns and maintains Rowell Street, which is adjacent to property owned by appellees, H. W. McHenry and R. B. Wilson. McHenry and Wilson operate the Wright-King Oldsmobile Agency on property here under discussion. There is, beneath Rowell Street, and beneath the Wright-King Oldsmobile building, a drain encased in tile, carrying water from the south to the noth part of the city, and eventually dischaging into a creek there. This drain was installed under the land now

owned by appellees in 1948 or 1949, and the installation was made by one Milton Green (who, at that time, owned the property on which the building is now located) and the City of El Dorado. Green provided the tile, and the city provided the equipment and labor, and made the actual installation. Green subsequently sold the lot to King, and the latter constructed a brick and steel building on the premises. King sold the building to appellees in 1960. This property fronts on Rowell Street, which is paved with asphalt, and improved with curbs and gutters. Proper maintenance of this street has been difficult, because of repeated cave-ins, evidently caused by the type of soil under the street. Appellees have likewise experienced difficulty in that the floor of their building has cracked and settled during the last few years. Apparently the drain tile was laid in a bed of quicksand, and the tile has broken in places, and leaked, causing the soil under the building to wash away.

Appellees requested the assistance of the city to repair the drain under the building, but the city refused the request. In July 1963, a suit was instituted against the city, wherein appellees sought to establish that appellant had installed the drain, and was responsible for the maintenance thereof. Appellant denied responsibility, but the case was never tried, the parties agreeing upon a consent decree. This decree recited that the City of El Dorado "owns no interest in the storm sewer located upon the land described  *  *  *  and  *  *  *  is not responsible for the maintenance of said storm sewer;  *  *  *." Thereafter, the City Council received information that appellees were fixing to block the drain to prevent the water from flowing under their building, and the Council instructed the City Attorney to advise appellees that they were not to obstuct or "stop up" the drain in any manner. Nonetheless, appellees poured sand and cement into the drain, preventing the flowage of water under the building, and on to the north. The city then instituted suit, seeking an injunction to prevent appellees from obstructing the flow of the water, and further asking that appellees be required to maintain

the drain in a good state of repair. The court granted a temporary restraining order, but on final hearing dissolved this order, and dismissed the city's complaint for want of equity. From the decree so entered, appellant brings this appeal.

For reversal, the city contends that appellees have obstructed a natural water course, and the court erred in refusing to grant the injunction; further, that, even if the drain were an artificial water course, its use, for a long period of time, has the same legal effect as though it were a natural water course. Appellees contend that the city cannot properly assert any rights in the drain because of the consent decree heretofore mentioned, and further, that the city did not sustain the burden of proof necessary to establish the existence of a natural water course. It is appellees' theory that the water, flowing in the drain, was only surface water, and they assert that the case is controlled by *Levy v. Nash*, 87 Ark. 41, 112 S. W. 173. Furthermore, it is contended that the city did not show that appellees' act of blocking the drain had been the cause of any damage complained of.

Proof on the part of appellant was to the effect that a natural water course had originally started some distance south of the property here in question, and had run somewhat east of what is now Northwest Avenue. This drain, according to appellant's contention, had been fed by springs, though one of the two witnesses, who testified on behalf of appellant, stated that these springs ceased to flow altogether in the '20's. Appellees' witnesses testified that the only flow of water in the vicinity of the property was drainage from rainfall or surface water. We see no need to detail the proof relative to whether the drain constituted a natural water course, for we do not consider that fact to be controlling.[1]

Likewise, under our reasoning, appellant's second point is not germane to the main issue.

[1] The Chancellor did not render an opinion, and the decree only dismisses the city's complaint. We do not know what facts he considered to be controlling, but it might be said that we would be unable to find by a preponderance of the evidence, that the court erred in not holding that the drain was a natural water course.

Appellees' proof was to the effect that only surface water was involved, and they contend that this case is governed by *Levy* v. *Nash, supra,* where the court held that the owner of a city lot has a right to prevent the flow of suface water upon his lot by filling up a ditch, by elevation, or by acting in any other manner that will protect his property against surface water from an adjoining lot. However, as stated, we see no need to pass upon this question.

Admittedly the city installed the drain in question, which is now under appellees' place of business. In doing so, the city diverted the flow of water (surface or otherwise) from its natural route. Whether this was done at the request of the person who owned the property at that time (as contended by appellant) is really immaterial. The fact remains that this defective drain was installed by the city. While the city contends that it *owns no interest* in the drain under the building, and is not responsible for the maintenance of such drain (as entered in the earlier consent decree), it is apparent that it (the city) is asserting an interest of some nature, else it would not have sought injunctive relief. In effect, the city is asserting a *right to use the drain under the building.* The municipality maintains the drain under Rowell Street, and up to the point where it enters appellees' property. In contending that the appellees have no right to obstruct it, the city is, in effect, contending that it has a right to keep the drain open, *i.e.,* that it (the city) has an easement.[2]

As previously stated, appellees purchased this property in September 1960. There is absolutely no evidence in the record that appellees, or either of them, had any knowledge that this drain was under the building,[3] or that the city was asserting any right whatever in connection with the building. In 17A Am. Jur., under "Easements," Section 156, Page 761, the general rule is stated as follows:

[2] Of course, the city could use it power of eminent domain in condemnation proceedings, but it has not elected to do so.

[3] Mr. McHenry testified that he did not learn of the drain until several months after purchasing the building.

"It has often been said that in order to affect the purchaser of a servient estate the easement if unrecorded, must be one that is apparent as well as necessary and continuous, or the marks of the servitude must be open and visible. Accordingly, it is held that if the servitude cannot be discovered by an inspection of the premises, the purchaser is not charged with notice of its existence except in so far as he may be charged with constructive notice under the recording laws. On the other hand, the proposition that a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises is sound beyond question. Normally, since an easement implied, upon the severance of a tract, from an existing use is a physically obvious servitude, a purchaser of the servient estate will be charged with notice of the easement.

"In this connection, the fact that an easement is an 'apparent easement' is of importance in charging a purchaser of the servient estate with notice of such easement, and 'apparent easements' have been defined in this respect as those which may be discovered upon reasonable inspection. In regard to charging with notice the transferee of the servient estate, apparent easements are not only such as are visible or must necessarily be seen, but such as may be seen or known on a careful inspection by a person ordinarily conversant with the subject. Examples of apparent easements include canals and ditches, chimney flues, ferry landings, light and air, pipes, poles and wires, private ways, privies, supports of encroaching structures, stairways, and water rights. *On the other hand, an underground drain or pipe is not an apparent servitude unless there are physical conditions on the surface which disclose its existence.*"[4]

In *Hannah* v. *Daniel*, 221 Ark. 105, 252 S. W. 2d 548, this court, quoting 17 Am. Jur., Section 130, Page 1018, stated:

---

[4] Emphasis supplied.

"A purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises."

In *Butterworth* v. *Crawford*, 46 N.Y. 349, 7 Am. Rep. 352, the court held that an underground drain is not an apparent servitude or easement. As stated, there is nothing in the record that indicates that appellees had any knowledge of the tile drain under the building; there is no evidence that anyone told them about it; there is no evidence of any recorded instrument to put them on notice. Certainly, appellees could not be expected to know that a tile drain was buried six to eight feet under their property.

We also agree with appellees that appellant's evidence did not establish the fact that damage to Rowell Street had been occasioned by the plugging of the drain, for the evidence reflects that there had been a number of cave-ins while the drain was still open. The Public Works Director for the City of El Dorado testified that quicksand is three feet deep under the edge of the street; while the sewer tile, according to the witness, is six to eight feet below the surface of the street.

It would appear that this drain, instead of passing under appellees' building, could be carried down Northwest Avenue, which is actually nearer the location of the alleged natural drain than the pipe under the building. According to one of the engineers, the cost. to run the sewer down Northwest Avenue would be less than the expenses incurred in maintaining the present drain.

Finally, we think the equities lie with appellees. As stated in 43 C.J.S., "Injunctions," Section 30, Page 462:

"Ordinarily, on application for an injunction, the court will in the exercise of the wide discretion with which it is vested take into consideration the relative inconvenience or injury which the parties will sustain by the granting or refusal of the application for an injunction. The rule is laid down in a large number of decisions that, when the issuance of an injunction will cause great

injury to defendant, and will confer no benefit or very little benefit *in comparison*[5] on complainant, it is proper to refuse the injunction,   \*   \*   \*.''

Unquestionably, the damage to the building (if the drain is continued) would be such as to completely ruin the premises for the use of appellees in their business.

We are unable to say that the Chancellor's findings were against the preponderance of the evidence.

Affirmed.

---

[5] Emphasis supplied.