Clyde CHISM et al *v.* Dessie TIPTON et al

CA 80-107        601 S.W. 2d 254
Court of Appeals of Arkansas
Opinion delivered July 2, 1980
Released for publication July 8, 1980

*Macom, Moorehead, & Green*, by: *J. W. Green, Jr.*, for appellant.

*Fletcher Long. Jr.*, for appellee.

GEORGE HOWARD, JR., Judge. Appellants, defendants below, and appellees, plaintiffs below, are adjacent property owners. It is stipulated that appellants are the record titleholders of the Northwest Quarter of the Southwest Quarter, Section 14 which lies north of the Southwest Quarter of the Southwest Quarter, Section 14, of which appellees are the record title owners.

The natural boundary line, representing the southern boundary line of appellants' property and the northern boundary line of appellees' property is approximately 12 to 15 feet north of the property claimed by the appellants by adverse possession, and the southern extremity thereof has been characterized by the appellants as the possessary line.

The second issue relates to the construction of an earthen levee by the appellees approximately between the eastern half of the boundary line for the protection against the flow of surface water draining from appellant's property.

The trial court found that the appellants had acquired title to all lands north of the possessary line commencing at approximately the northwest corner of the Southwest Quarter of the Southwest Quarter and thence easterly for a distance of approximately 660 feet to an oak tree by adverse possession, but failed to establish title to that land east of the oak tree-the east half of land claimed involving a distance of 660 feet to the northeast corner of the Southwest Quarter of the Southeast Quarter of Section 14.

While the trial court did not specifically find that a natural stream or water course fed from a permanent or natural source, containing a definite channel, possessing a bed or banks, the court did treat the water flowing from appellants' property across the appellees' property as a water-course, but did not order the appellees to remove the levee. However, the court directed appellees to divert the flowage to a ditch to be constructed along the boundary line to the northeast corner of appellees' property and thence south in a ditch along the east boundary line of appellees'. The trial court further ordered that in the event appellees should in-terfere with the diversion of the water, appellees would be

required to remove the levee so that the water could flow across appellees' property as in previous times.

The appellants have appealed from the trial court's decree permitting the levee to be maintained across what appellants contend is a natural watercourse, and the lower cour's finding that appellants had not established their title to the east 660 feet of the Southwest Quarter of the Southwest Quarter.

The appellees have cross appealed from the trial court's decree finding that appellants had established title to the west 660 feet of the Southwest Quarter of the Southwest Quarter by adverse possession, and from the finding that the water draining from appellants' land is a watercourse, and in directing the appellees to remove the levee in the event appellees should interfere with appellants' use of the ditch to be constructed to divert the water along the eastern boundary line of appellees' property.

In *Leader* v. *Mathews*, 192 Ark. 1049, 95 S.W. 2d 1138 (1936), the Arkansas Supreme Court gave the following definition of a watercourse:

> " 'A watercourse is defined to be a running stream of water; a natural stream, including rivers, creeks, runs and rivulets. There must be a stream, usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. It must flow in a definite channel, having a bed or banks, and usually discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of the tract of land occasioned by unusual freshets or extraordinary causes.' "

Water flowing into low places does not necessarily constitute a watercourse and where flooding develops, a landowner is justified in defending against flood water and can do so without incurring liability, unless he unnecessarily injures or damages another. *Stacy* v. *Walker*, 222 Ark. 819, 262 S.W. 2d 889 (1953). Moreover, a landowner is under no duty to receive upon his land surface water from the adjacent

property. He may repel such water at his boundary where the result can be achieved without "disproportionate prejudice to another." *Stacy* v. *Walker*, supra.

We are persuaded that the water flowing from appellants' property across lands of the appellees is merely surface water. We perceive that the trial court did not specifically find that this was a running stream or a natural stream fed from permanent or natural sources.

Holly Lavone Fox testified that the water flowing across appellants' land drains first from the Gid Robertson farm and across appellants' property and then across appellees' farm and exiting appellees' farm through a culvert under Highway 79 South; that approximately one year prior to the trial, he improved the ditch on appellants' farm by cleaning the ditch with his "little old side-winder ditch digger."

John A. Johnson, Sr., who previously owned the property involved in this proceeding and is the grantor for both appellants and appellees or their predecessors, testified that during the 1930's, the WPA constructed ditches across appellants' property for drainage purposes and that the ditch "went angling down to the south about half-way southeast part of the part I sold Noel Fox (appellee), and they quit the ditch. . . . and me and my brother went in there with a middle buster and we plowed it on out as far as we could get down to the edge of the woods."

We hold that the trial court's decree should be modified to eliminate that provision in the trial court's decree imposing a duty on the appellees to remove their earthen levee in the event the alternative watercourse is "interfered with in any manner whatsoever."

We hold that the trial court's holding that appellants have established title to the west approximately 660 feet of that property claimed by adverse possession, but failed to establish ownership of the east 660 feet, is supported by a preponderance of the evidence, and accordingly, we affirm.

James A. Johnson, Sr., testified essentially that he was in

possession of the two tracts of land for approximately twenty-one years before he sold this property to the appellants and appellees or their predecessors; that the established boundary line between the two tracts was the old fence row which has been characterized as the possessary line commencing at the northwest corner of the Southwest Quarter of the Southwest Quarter and proceeding 660 feet to an old oak tree, but is not the true boundary line.

Sybil Chism testified essentially the same as John A. Johnson, Sr., that the fence extended from approximately the northwest corner of the Southwest Quarter of the Southwest Quarter to a point approximately 660 feet to an old oak tree. She also testified that appellees and their predecessors farmed their property up to the south end of the fence while she and her predecessors farmed the northern tract immediately north of the fence including the parcel claimed by adverse possession for a period of time in excess of the statutory period. She also testified that it was generally recognized by both the appellants and appellees and their predecessors that the fence was the dividing line between the two parcels of land.