2009 Ark. App. 276

**SOUTH FLAG LAKE, INC., Appellant,**

v.

**Henrietta GORDON, et al., Appellee.**

**No. CA 08–623.**

Court of Appeals of Arkansas.

April 15, 2009.

**602**

Verkamp & Ladd, P.A., by: John P. Verkamp, Greenwood, Charleston, for appellant.

Malcolm R. Smith, P.A., by: Malcolm R. Smith, Stuttgart, for appellees.

ROBERT J. GLADWIN, Judge.

Appellant South Lake, Inc. appeals the October 23, 2007 order of the Arkansas County Circuit Court that denied appellant's complaint for injunction. On appeal, appellant argues that the circuit court erred in adopting the reasonable-use theory and in denying the complaint for an injunction against appellees' pumping and artificially maintaining the level of Flag Lake. We affirm.

### Facts

This appeal arises from a lawsuit between appellant, an Arkansas corporation that owns certain farm land in Arkansas County for the primary purpose of hunting and fishing, and appellees—various individuals, estates, partnerships, and corporations that own farmland in the same area of Arkansas County. Part of appellant's property lies within a body of water known as Flag Lake. Appellees' various properties are located either within or adjacent to Flag Lake, or in close vicinity thereto. Appellees use water from Flag Lake to irrigate their crops.

Evidence indicates that in 1931 the natural elevation of the lake was approximately 165 feet. Around 1940, appellees' predecessors built a levee at the south end of Flag Lake to impound water therein for the irrigation of their crops. The levee was built after appellees' predecessors made a request to appellant's predecessors, and it is undisputed that the levee benefitted both appellees' predecessors for irrigation purposes and appellant's predecessors for hunting purposes. A permanent spillway was built into the levee at the time of its construction that allowed water to be held in Flag Lake to a maximum level of 168 feet. Subsequently, water was pumped out of Flag Lake to irrigate the surrounding farmland.

In 1980, appellees formed an association known as the Flag Lake Water System Associates for the purpose of better utilizing the lake for irrigation purposes. In 1981, the association built a surface-water-irrigation system whereby water can be pumped into Flag Lake from Bill's Bayou to replenish the water that is pumped out for irrigation purposes. This construction included the strengthening of the levee and the addition of an adjustable-spillway weir in the levee. The weir system is made of a batter-board type whereby boards may be added or removed from the weir box to raise or lower the level of Flag Lake. The elevation at the bottom of the adjustable weir is 164 feet and nine inches

to which boards can be added to hold water to a maximum of 168 feet—identical to the permanent spillway. As a result, the lake has two spillways located side by side, so that water can be lowered for work after the irrigation season and raised during irrigation season.

Flag Lake receives runoff from two creeks, and the natural runoff from the Flag Lake watershed would keep the lake at an average elevation of 168 feet if no water was pumped into or out of it. There are occasions when the Arkansas River is at such a level that it backs up water through its tributaries into Flag Lake to a level greater than 168 feet.

In 1981, appellant's predecessor and the association entered into an easement regarding the pumping of water into Flag Lake, and that practice has continued with the parties negotiating from time to time as to the proper level of the lake. However, appellant asserts that permission to pump water into the lake was granted as part of the easement only for a period of five years. Since the entry of the easement, appellees have used Flag Lake almost exclusively as their source of irrigation. Appellant contends that any pumping into the lake since 1985 has occurred solely through permission it extended to the farmers.

A level of 168 feet is required to provide irrigation water to the 3,425 acres of farmland it serves. If Flag Lake was lost as a source of irrigation, appellees would be required to put down twenty-three wells at an average cost of $23,000 each to compensate for the loss of irrigation water.

Appellant contends that the pumping of water into Flag Lake has damaged its ability to successfully hunt on its property by killing vegetation and preventing reseeding during the growing season. Additionally, appellant argues that the water level caused by the pumping prevents the planting of vegetation in the area around appellant's house blind. However, there is evidence that indicates that because the natural average of the lake since the construction of the levee in 1940 would be 168 feet, such planting would not be feasible even if appellees were enjoined from further pumping. Additionally, evidence supports a finding that the house blind is located in the main part of the lake where the natural level prior to the construction of the levee was 165 feet—still not likely dry enough to enable planting of vegetation. Appellant did not request that the levee be removed and has acknowledged that no economic loss has been suffered— merely that the pumping has adversely affected its ability to hunt waterfowl on its property.

Appellant advised appellees in 2003 that no more pumping would be allowed and filed a complaint seeking a permanent injunction on March 17, 2005. Appellees filed a timely answer on April 7, 2005, which was followed by a response from appellant filed on April 21, 2005. Additional pleadings were filed by both parties, and on April 18-19, 2007, testimony was heard over a period of more than a day and a half, numerous exhibits were introduced, and the parties submitted briefs and proposed findings of fact and conclusions of law. The circuit court also viewed Flag Lake and the water-control system accompanied by counsel and representatives of both parties. On October 2, 2007, the circuit court entered a letter ruling denying appellant's request for an injunction, and an order to that effect was filed on October 23, 2007. Appellant filed a timely notice of appeal on October 29, 2007, and this appeal followed.

### Standard of Review

Both parties cite *Delancy v. State*, 356 Ark. 259, 151 S.W.3d 301 (2004), regarding

the standard of review, in which our supreme court stated that it reviews injunctive matters *de novo*. Additionally, the supreme court stated in *Delancy* that,

> The decision to grant or deny an injunction is within the discretion of the trial judge. We will not reverse the judge's ruling granting or denying an injunction unless there has been an abuse of discretion. When considering an order that grants or denies an injunction, we will not delve into the merits of the case further than is necessary to determine whether the lower court exceeded its discretion. We have explained that the sole question before us is whether the trial court departed from the rules and principles of equity in making its order, and not whether we would have made the order. In reviewing the lower court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.

*Id.* at 264–65, 151 S.W.3d at 304–05 (internal citations omitted). Additionally, appellant contends that the circuit court erred by inappropriately applying a reasonable-use theory on this water-rights case, and as such, an abuse of discretion and misapplication of the law occurred, which also requires *de novo* review. *Id.*

### Discussion

#### I. Adoption of Reasonable–Use Theory

Appellant maintains that the reasonable-use theory is inapposite to the facts and circumstances of this case, stating that the theory is applicable only in cases where there is an issue of the use of water or the removal of water from a stream or reservoir. In the instant case, appellant urges that there is no dispute concerning what use riparian owners can have of the lake water. The dispute is whether or not the appellees should be allowed to continuously trespass upon appellant by artificially pumping water onto appellant's property, thereby artificially flooding its property. Appellant states that the reasonable use of riparian owners is weighed only if it is a lawful use, and takes issue with the circuit court's application of the law set forth in *Harris v. Brooks*, 225 Ark. 436, 283 S.W.2d 129 (1955). The circuit court determined that in this case, "it appears that the management of water in Flag Lake has become more a question of reasonable use rather than an easement issue;" however, appellant points out that our supreme court in *Harris* applied the reasonable-use theory to promote the greatest beneficial use of the water by riparian-water users—dealing only with the use of water from a water source. *See also DeVore Farms, Inc. v. Butler Hunting Club, Inc.*, 225 Ark. 818, 286 S.W.2d 491 (1956) (stating that there should be no right to flood the property to interfere with the natural flow of water onto the property). Appellant urges that the same law should apply here, and the pumping of water backwards over a dam and into the lake is certainly not a natural flow of water.

Appellant indicates that the number of its acres that are flooded varies greatly depending on the level of the water in the lake. If the elevation is at 168 feet, 150 acres of appellant's property are inundated with water. If the water level is at 165 feet, only fifty acres are covered with water. Appellant asserts that the artificial pumping of water back upstream into a reservoir for the purpose of artificially flooding the reservoir with water cannot be in any sense a riparian use subject to the reasonable-use theory. Appellant claims that the case is closer to those actions involving the unlawful diversion or

stoppage of a water course, though acknowledging that the flooding here is caused artificially. *See Chism v. Tipton,* 269 Ark. 907, 601 S.W.2d 254 (1980) (holding that the property owner being trespassed upon should be allowed to divert the flowage of water from property upon which it is unlawfully maintained).

Appellees say that to the extent that Flag Lake would be at 168 feet naturally—if no |7water were pumped out or in—the reasonable-use theory in *Harris, supra,* would be applicable because it seeks to promote the greatest beneficial use of the water by riparians with minimal harm to others. They assert that the theory has been extended by our supreme court to subterranean and percolating waters, showing that it is not to be so narrowly limited as appellant argues. *See Jones v. Oz–Ark–Val Poultry Co.,* 228 Ark. 76, 306 S.W.2d 111 (1957) (holding that there was no good reason not to apply *Harris* to subterranean waters). Appellees raise the question that if the average natural level of the lake is 168 feet, how can their replenishing the water that they have removed for irrigation to that same level be unreasonable under *Harris?* Appellees additionally contend that their activities cannot be said to have caused the harm complained of by appellant. They did not start pumping water *into* the lake until 1981, some forty-one years after the levee was constructed, which set the level of the lake at 168 feet. If the lake being at 168 feet caused harm to appellant, it started in 1940 when the predecessors mutually decided to build the levee.

Additionally, appellees point out that the cases cited by appellant do not speak of "trespass" despite appellant's argument. They also reiterate that Flag Lake, Inc., whose principal owner is Bill Tedford, is the other corporation that owns a substantial stake in the lake. Flag Lake is not a party plaintiff in this action; additionally, the two hunting clubs collectively own 125 acres, which collectively constitute thirty percent of the 421–acre lake. The remaining seventy percent, or 276 acres, is owned by farmers who depend on the lake for irrigating their rice and soybean crops, which also attracts the waterfowl hunted by appellant. Engineer Gene Sullivan testified that if the injunction were granted, such that |8appellees could not replace the water taken out by the fifteen relift pumps for irrigation purposes, the water level would drop so much that in two days appellees would be unable to continue irrigating their crops.

We hold that the circuit court did not abuse its discretion by applying the reasonable-use theory in the instant case. Based upon our review, the case law indicates that the theory has been extended by our supreme court to subterranean and percolating waters, and it has not been so narrowly limited as appellant argues. Accordingly, we affirm on this point.

## II. Denial of Plaintiff's Request for Injunction

Appellant emphasizes that the parties entered into a five-year easement in 1981 that allowed for the pumping of water, and thereafter, the owners of Flag Lake continued to allow pumping into Flag Lake with restrictions from and only by permission of appellant. Appellant takes issue with the circuit court weighing the benefits to the members of the association and the cost to the farmers to obtain water by drilling underground wells to supply irrigation water. The circuit court found that, in light of the uses of the lake by the owners being hunting and fishing, the granting of the injunction would cause enormous injury to the farmers while conferring little benefit to the owners of Flag Lake. The circuit court seemed to have

placed emphasis on the fact that the association began pumping water in 1981; however, appellant contends that appellees did not establish that its members had a flowage easement by prescription. In fact, appellant asserts that the circuit court did not make a finding that appellees had established an easement, yet it basically extended the rights of a flowage easement to the members where none existed. In essence, appellant argues that granting the right to pump water onto the property of appellant constituted the sanctioning of a trespass upon its property. Accordingly, appellant urges that the circuit court should have enjoined the trespass and not engaged in the weighing of harm to benefit of the respective parties.

Appellant addresses the necessary elements needed to prove adverse possession or easement by prescription, stating that the appellees must show that they have been in possession of the property continuously for more than seven years and that their possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Trice v. Trice,* 91 Ark.App. 309, 210 S.W.3d 147 (2005). Appellant claims that appellees could not establish that their right to control the water level was exclusive, as testimony from Bill Calvert, primary owner of appellant, and Richard Gordon, one of the members of the association, indicated that they were required to, and did, work with appellant in keeping the level at or below a maximum level set by appellant.

Additionally, appellant claims that appellees could not establish that their possession of the property was hostile, adverse, or continuous. Only two occasions were

documented where appellees failed to comply with the restrictions for a maximum level of 167.5 feet. Additionally, when the restrictions were not met, the members took measures to correct the problem. Finally, appellees could not establish that any adverse or hostile use was open. To the contrary, the members recognized the need to talk to Bill Calvert, as well as Bill Tedford of Flag Lake, Inc., another owner of the property in question, concerning water levels.

Appellant also addresses the circuit court's finding that it did not establish any damage suffered that was caused by appellees' pumping. Appellant claims that it did just that in demonstrating that the vegetation of this wetland area will never regenerate—a fact that was admitted by witnesses testifying for appellees. Appellees called a forester who testified that tupelo, cypress, and buck brush cannot regenerate if the ground is continuously inundated during the germination periods of April through September.[1] Additionally, Bill Calvert testified that in the area of the house blind—now located in the middle of open water—there are no live bushes or any type of live vegetation. Mr. Calvert explained that dead remnants of buck brush still exist in the vicinity of the house blind, but it cannot regenerate if the water is continuously maintained at a level covering the ground. Further, he indicated that, in the past, members of his club had driven vehicles to their house blind on dry land. He testified that at the present time they are unable to maintain and repair their blinds in the same manner or to plant and re-seed their property. Mr. Calvert testified that they are also unable to access the property by dry land to perform exca-

---

1. The witness originally testified that the plants would not experience mortality rates higher than normal, but reconsidered that position when he was shown studies performed in areas where water levels were artificially elevated and maintained at an elevated level.

vation work to create higher and lower elevations within the terrain because approximately 100 acres of their property is kept inundated with water on an artificial basis during the summer.

It is worth noting that the evidence indicates that a proposal was made to appellees regarding the construction of canals within the lake that would allow water to get to their farms at lower elevations, but it was rejected on concerns of cost to the farmers. A study performed by Sullivan and Associates states that the farmers' individual canals need to be cleaned and dredged regardless of whether the new canal proposal was implemented. Appellant asserts that at the time of the trial, no witnesses for appellees could establish that any of the farmers had cleaned their canals as recommended in the study that was performed some three years prior to the trial. Appellant alleges that this is indicative of the mind set of appellees—they would prefer simply to raise the elevation of the water in the lake rather than perform routine maintenance on their canals.

Appellant cites Arkansas Code Annotated sections 15–22–210(3)(B) (Repl.2003) and 15–22–216(b)(2)(A) (Repl.2003) in support of its contention that the policy in Arkansas has long been that a person should not be allowed to flood property belonging to other property owners. Appellant claims that the actions of appellees constitute an unlawful trespass under section 15–22–216 and asserts that there is no adequate remedy at law for the continuous trespass other than injunctive relief.

Appellees correctly state that appellant has the burden of establishing that appellees have caused it irreparable harm. Despite the arguments in their brief, appellant's president specifically testified before the circuit court that he had suffered no economic loss.

J.D. Nealley, a forestry consultant, testified that it would take four months of "dry time" for the lake species to re-seed, which would not be possible at any time given the natural level of the lake and appellant's desire for the levee to remain in place. He attributed the vegetation stress he noticed to old age and beaver damage. Also, Todd Fuggatt, a geologist, testified that the Arkansas Natural Resource Commission has delineated all of Arkansas County as a critical groundwater area both for deep and shallow aquifers, and that the area is using ground water at a level that is far above what is sustainable. He explained that the Arkansas Water Plan encourages the maximum use of surface water and that the Flag Lake irrigation project benefits the public as far as that is concerned. He further indicated that the decline of the groundwater level in Arkansas County since 1980 has made it more urgent to protect the aquifers.

No doubt the circuit court focused, at least to some extent, on the fact that appellant utilizes the property in question for recreational purposes, has not suffered any economic loss, and the use is limited to the sixty-day waterfowl season. That is contrasted against appellees' use of the lake for their livelihood—the farmland and crops growing thereon. Appellees cite *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999); *City of El Dorado v. McHenry*, 239 Ark. 232, 388 S.W.2d 554 (1965); and *Schuman v. Stevenson*, 215 Ark. 102, 219 S.W.2d 429 (1949), regarding the requirements for granting a permanent injunction, and maintain that the equities fall in their favor in this situation. Our supreme court reiterated those requirements in *City of Dover v. City of Russellville*, 363 Ark. 458, 215 S.W.3d 623 (2005), as follows:

> To establish sufficient grounds for a permanent injunction, the movant must show (1) that it is threatened with irrep-

arable harm; (2) that this harm outweighs any injury which granting the injunction will inflict on other parties; (3) a likelihood of success on the merits; and (4) that the public interest favors the injunction. Irreparable harm is the touchstone of injunctive relief. Harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Id.* at 460–61, 215 S.W.3d at 625 (internal citations omitted).

We hold that appellant has failed to meet its burden of proof with respect to these requirements. It appears that little benefit would be conferred to appellant if the injunction were granted, considering that the natural level of the lake is 168 feet with no lengthy period of fluctuation that would afford the re-seeding and planting opportunities that appellant desires. Additionally, it is undisputed that the loss of the lake as an irrigation source to appellees would be an economic drain on the affected farmers. There is also evidence before us that, at some point, there is a possibility that the ground water in the area may be regulated and may not be a feasible alternative. Based upon on our *de novo* review, giving due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony, we cannot say that the circuit court abused its discretion in denying the request for an injunction. Accordingly, we affirm.

Affirmed.

PITTMAN and HENRY, JJ., agree.