2011 Ark. App. 478

**Betty TINER, Appellant**

v.

**William Joe "Bill" TINER, Appellee.**

**No. CA 10–1302.**

Court of Appeals of Arkansas.

June 29, 2011.

Guy R. Satterfield, Little Rock, AR, for appellant.

Traci LaCerra and Mary Claire McLaurin, Little Rock, AR, for appellee.

DOUG MARTIN, Judge.

Appellant Betty Tiner entered into a property settlement agreement with her ex-husband, appellee William Joe ("Bill") Tiner, whereby Bill agreed to pay Betty $400,000 in a lump-sum payment in exchange for Betty's one-half interest in real property and assets belonging to the couple's business, Benton Transmission. When Bill failed to pay the lump sum, Betty moved for and was granted a writ of immediate execution. Betty now appeals from the Saline County Circuit Court's subsequent order granting Bill's emergency motion to set aside the writ of execution entered on October 22, 2010. Betty also appeals from the trial court's rulings issued orally from the bench following a hearing on Betty's motion for contempt and other relief, for which an order had not yet been entered. That order was subsequently entered on January 14, 2011, and Betty amended her notice of appeal to include that order. We affirm in part and dismiss in part.

We affirm the trial court's order filed on October 22, 2010. This court has jurisdiction to review the trial court's decision under Arkansas Rule of Appellate Procedure–Civil 2(a)(6), as the order appealed from is an interlocutory order by which an injunction was granted. On the other hand, we dismiss Betty's appeal as it pertains to the order entered on January 14, 2011, because the trial court lacked jurisdiction to enter such order, given that Betty had already lodged the record on appeal with this court on December 21,

2010. Once the record is lodged in the appellate court, the circuit court no longer exercises jurisdiction over the parties and the subject matter in controversy. *Myers v. Yingling*, 369 Ark. 87, 89, 251 S.W.3d 287, 290 (2007); *see also Canady v. Garrett*, 2009 Ark. App. 882, 2009 WL 4851946. Therefore, we will address only Betty's argument with respect to the October 22, 2010 order.

In the "First Amended and Substituted Decree of Absolute Divorce," a separate section entitled "Property Settlement Consideration" provides:

9. In consideration for the transfer and conveyance to Defendant William Tiner of Plaintiff Betty Tiner's one-half (½) interest in the above described marital real property and Benton Transmission assets, Defendant William Tiner agrees to pay Plaintiff Betty Tiner, who agrees to accept, a bargained for specific sum for property settlement in exchange for all of Plaintiff Betty Tiner's right, title and interest in all the parties' real property and Benton Transmission assets. This specific total sum is **FOUR HUNDRED THOUSAND DOLLARS ($400,000.00)**; subject to, and conditioned upon, the Defendant William Tiner timely paying the above lump sum property settlement funds on of (sic) before July 16, 2009, which is thirty (30) days from date of the final divorce hearing.

William Tiner, defendant, shall also pay additional property settlement funds to Betty Tiner, plaintiff, payable on a weekly basis, in the weekly sum of **THREE HUNDRED DOLLARS ($300.00) per week,** beginning on June 16, 2009, until Betty Tiner, plaintiff, reaches age 65.

That the Plaintiff Betty Tiner specifically retains title and ownership in the aforementioned real estate assets, as tenant-in-common by operation of law,

until she receives full and timely payment of $400,000.00 lump sum portion of her property settlement funds she is due under this agreement. Upon Defendant William Tiner's full and timely payment of all the above described lump sum property settlement funds, Plaintiff Betty Tiner shall grant, convey, and transfer, by Quitclaim Deed, all of her right, title, equity, and interest in the parties' real properties described above, and any and all other documents necessary to transfer those real estate and Benton Transmission assets to Defendant William Tiner, or any other designated person or entity as he may direct.

. . . .

**IT IS FURTHER ORDERED** that the Property Settlement Agreement referenced above is incorporated by reference herein and is adopted by this Court, but not merged into this Decree; and the parties are ordered to abide by the terms of said Property Settlement Agreement.

(Emphasis in original.)

Bill did not pay the lump sum on July 16, 2009, but advised Betty that he was obtaining a loan to cover the amount. Bill, however, failed to close on the loan, and instead, on August 10, 2009, filed for Chapter 11 bankruptcy. The bankruptcy court dismissed Bill's case upon finding that his petition was filed in bad faith in an attempt to defraud Betty in their divorce proceedings.

On October 19, 2010, Betty filed a motion to enforce the decree, for contempt, and for an expedited order for writ of immediate execution on Bill's tenant-in-common ownership interest in specific real and personal property. On the same date, the Saline County Circuit Court entered an order granting Betty's request for writ of immediate execution and set a hearing to be held on November 8, 2010.

Bill filed an emergency motion to set aside the writ of immediate execution, to modify the order granting the writ, and for other relief on October 22, 2010. Bill alleged that, at approximately 3:30 p.m. on Thursday, October 21, 2010, the Saline County Sheriff's Office served the writ of execution on him and seized control of Benton Transmission. Bill alleged that he immediately called his attorney, which was the first notice Bill's counsel had with respect to the writ. Bill further alleged in his motion that the divorce decree "does *not* give the Plaintiff a judgment against the Defendant for $400,000.00" and that the writ of immediate execution was void due to the lack of a judgment. In addition, Bill alleged that the seizure of the parties' business irreparably harmed him in the following manner:

a. Eight (8) of the Defendant's employees plus the Defendant are now out of work. The employees (sic) pay day is today, Friday, October 22nd;

b. At least thirty (30) customer vehicles are on the Defendant's business lot and they cannot be serviced or picked up. Some of the vehicles belong to the Defendant's biggest customers;

c. The Defendant does not have a place to live, as he lives above his business; and

d. The Defendant cannot pay the $300.00 per week payable to the Plaintiff unless his business is open.

The allegations in Bill's motion were not verified, and Bill submitted no sworn affidavits along with his motion. The trial court granted Bill's motion to set aside the writ of execution, expressly finding that irreparable harm would come to Bill's employees and customers if Benton Transmission was closed for business until the hearing scheduled for November 8, 2010.

This court reviews injunctive matters de novo. *South Flag Lake v. Gordon*, 2009 Ark. App. 276, 307 S.W.3d 601. Further:

> The decision to grant or deny an injunction is within the discretion of the trial judge. We will not reverse the judge's ruling granting or denying an injunction unless there has been an abuse of discretion. When considering an order that grants or denies an injunction, we will not delve into the merits of the case further than is necessary to determine whether the lower court exceeded its discretion. We have explained that the sole question before us is whether the trial court departed from the rules and principles of equity in making its order, and not whether we would have made the order. In reviewing the lower court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.

*Id.* at 5, 307 S.W.3d at 604 (citing *Delancy v. State*, 356 Ark. 259, 264–65, 151 S.W.3d 301, 304–05 (2004)) (internal citations omitted).

Betty argues that the trial court erred by issuing an ex parte order enjoining her enforcement of the writ of execution based on unverified allegations in Bill's motion to set aside the writ in violation of Ark. R. Civ. P. 65(a)(1).[1] Betty argues that the October 22, 2010 order was

---

1. "A preliminary injunction or a temporary restraining order may be granted without written or oral notice to the adverse party or his attorney *where it appears by affidavit or verified complaint* that irreparable harm or damage will or might result to the applicant if such preliminary injunction or temporary restraining order is not granted ...." Ark. R. Civ. P. 65(a)(1) (emphasis added).

void in its entirety because it was based on an unverified petition and she was not given notice before the restraining order was issued. We agree that the trial court improperly relied on Bill's unverified allegations of irreparable harm, but nevertheless affirm because the trial court reached the right result, albeit for the wrong reason. *See Charles R. Griffith Farms,* ₆*Inc. v. Grauman,* 2009 Ark. App. 515, 333 S.W.3d 430. While the trial court did not abuse its discretion in setting aside the order granting Betty's writ of execution, its decision should have been based on the lack of a judgment, rather than upon a finding of irreparable harm.

Given the plain language set forth in the divorce decree, the parties' property settlement agreement was an independent contract, as it was incorporated, but not merged, into the divorce decree. The provision in the agreement by which Bill was to pay Betty $400,000 in a lump-sum payment was not a judgment upon which the trial court could enforce through execution against Bill's real property and assets.

In *Thomas v. McElroy,* 243 Ark. 465, 420 S.W.2d 530 (1967), our supreme court discussed the formal requirements of a judgment. A judgment will be tested by its substance, not its form. *Id.* A judgment is distinguished from an order in that the latter is the mandate or determination of a court on some subsidiary or collateral matter arising in an action not disposing of the merits but adjudicating a preliminary point or directing some step in the proceedings. *Id.* A judgment must clearly specify the relief granted and must clearly show that it is the act of the law, pronounced and declared by the court upon determination and inquiry. *Id.*

In determining whether the five-year statute of limitations for written contracts or the ten-year statute of limitations for judgments applied, this court in *Meadors*

*v. Meadors,* 58 Ark.App. 96, 946 S.W.2d 724 (1997), rejected the appellant's argument that a property settlement agreement incorporated into a divorce decree was subject to enforcement by the court, and ₇thus should be considered a judgment. In *Meadors,* the property settlement agreement contained a provision that "[the appellee] shall pay to the [appellant] the sum of $10,000 cash." More than six years later, the appellee filed a motion for contempt alleging that the appellant had failed to pay the $10,000 that was owed to her. The appellant moved to dismiss the appellee's motion based on the five-year statute of limitations for written contracts found at Ark.Code Ann. § 16–56–111 (Supp.1995). In holding that the property settlement agreement was a contract, as opposed to a judgment, this court reasoned:

[W]e do not believe that the court, by its decree, rendered judgment for the amount specified in the property settlement agreement. While the provision imposed an obligation upon appellee to pay a sum certain, there is no indication that the court rendered judgment for that amount. That relief was not clearly stated in the decree, as it contains no language denoting the rendition of judgment. As such, we do not think that the provision was capable of enforcement by execution without it being reduced to judgment. It must be remembered that the agreement was an independent contract, and while it was incorporated into the decree, it did not, under settled law, merge into the decree. We hold that the provision was subject to the five-year statute of limitations.

*Meadors,* 58 Ark.App. at 99, 946 S.W.2d at 725.

Likewise, the provision in the parties' property settlement agreement stating that Bill was to pay Betty $400,000 in a

lump-sum payment was not the result of the trial court's rendering a "judgment" capable of enforcement by execution. No judgment was entered by the trial court until January 14, 2011, at which time the trial court ordered, among other things, that Bill pay $349,286 to Betty, plus interest at the rate of 5.5% calculated as of July 16, 2009, the date on which the original lump sum was due, in monthly installments of $3,000 beginning on December 10, 2010, and continuing on the tenth day of each month until the ₁₈judgment is paid in full. The trial court clearly specified its mandate in the judgment entered on January 14, 2011, whereas the provision in the property settlement agreement was simply an agreement between the parties and not subject to enforcement by execution. Although Betty argues that the trial court did not have authority to modify the parties' agreement, we cannot reach the merits of her argument at this time. Instead, we must dismiss this aspect of her appeal because the trial court was deprived of jurisdiction to render its judgment once the record was lodged with this court.

Affirmed in part; dismissed in part.

ROBBINS and BROWN, JJ., agree.