Stanley K. DELANCY *v.* STATE of Arkansas

CR 03-615                                                        151 S.W.3d 301

Supreme Court of Arkansas
Opinion delivered February 26, 2004

*Baxter, Jensen, Young & Houston*, by: *Ray Baxter*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *James F. Goodhart*, Spec'l Deputy Prosecuting Att'y, for appellee.

ANNABELLE CLINTON IMBER, Justice. The Chicot County Circuit Court issued a permanent injunction that required Appellant Stanley K. Delancy to remove a herd of elk under his control from the State of Arkansas or slaughter and dispose of them by December 31, 2002. On appeal, Mr. Delancy contends that there is insufficient evidence to support the injunction, and that the circuit court's order constituted a taking that requires just compensation under Article 2, § 22 of the Arkansas Constitution. We find no error and affirm.

In July 2001, the Southeast Arkansas Levee District granted Mr. Delancy a permit to construct a game fence and two cattle gaps[1] on approximately 725 acres in Chicot County. At least one of the cattle gaps was located on the Mainline Mississippi River Levee. Although Mr. Delancy wanted to install gates at the cattle gap crossing on the levee, the permit issued by the Southeast Arkansas Levee District specifically provided that "no gates will be installed at cattle gap crossings." Also in July 2001, Mr. Delancy

---

[1] A cattle gap will allow vehicles, but not cattle, to pass over a roadway.

submitted applications to the Arkansas Game and Fish Commission (AGFC) requesting a Wildlife Translocation Permit and Wildlife Commercial Breeder/Dealer Permit pursuant to AGFC Code § 15.01 et seq. (2004). Mr. Delancy was preparing to move a herd of elk he owned from property located in Louisiana to the enclosure he was constructing in Chicot County.

On August 10, 2001, Mr. Delancy met with wildlife officers from the AGFC who performed a preliminary inspection of the enclosure. The officers observed that the Mississippi River Levee had been "gated off" to form the enclosure. They expressed concern about unrestricted public access and advised Mr. Delancy that the gates would have to be closed and locked. In fact, at that point the gates had not been approved by the levee district. The wildlife officers also notified Mr. Delancy that he could not bring any elk into his facility until he received all the proper permits from the AGFC. On August 17, 2001, one of the officers returned to Mr. Delancy's enclosure while on routine patrol and discovered that the gates across the levee were unlocked and there were elk inside the enclosure. Mr. Delancy's application to the AGFC had not yet been approved, and the elk had neither been properly traced for disease, nor had they been inspected and vaccinated. In addition, the elk did not comply with AGFC's disease certification requirements.

Ultimately, the Southeast Arkansas Levee District denied Mr. Delancy's request to keep the gates on the levee road and had them removed. Shortly thereafter, on October 31, 2001, the AGFC denied Mr. Delancy's application for a Wildlife Translocation Permit and Wildlife Commercial Breeder/Dealer Permit. The AGFC advised him that he had ten days to remove the elk from the Arkansas enclosure. The elk were not removed, and on December 4, 2001, the Arkansas Livestock & Poultry Commission issued a quarantine order. The AGFC also issued citations for alleged violations of three AGFC Code provisions. Thereafter, the State of Arkansas filed a criminal information against Mr. Delancy charging him with possession of prohibited wildlife in violation of A.G.F.C. Code § 15.01, commercially breeding or distributing elk without a permit in violation of A.G.F.C. Code § 15.12, and transporting elk into Arkansas without a permit in violation of A.G.F.C. Code § 15.17. In conjunction with the information, the State sought an injunction to compel Mr. Delancy to remove the elk from the State of Arkansas, or, in the alternative, to authorize the State to remove and dispose of the elk.

During the bench trial on September 12, 2002, Mr. Delancy testified that he purchased the elk at various times from a seller in Louisiana. He admitted that he did not have the proper paper work on each elk and that one of the pregnant elk had escaped his enclosure. On November 1, 2002, the court entered an order finding Mr. Delancy guilty on all three counts, but deferred sentencing until December 3, 2002. The court also ruled that the State was entitled to a permanent injunction and ordered Mr. Delancy to remove forthwith from Arkansas all elk under his control, which matter would also be reviewed on December 3.

At that subsequent hearing, the court set the total fine for Mr. Delancy's criminal violations at $3,000, or $1,000 per violation, and concluded that while Mr. Delancy had ample time to make suitable arrangements to remove the elk from the State, he had not done so. The court allowed Mr. Delancy until December 31, 2002, to have the elk transported to another state or slaughtered. If Mr. Delancy either failed to remove the elk or have them destroyed by December 31, the State would be authorized to enter the land where the elk were maintained and seize or slaughter the elk, with all costs of disposal and testing assessed against Mr. Delancy. The court's written order was filed on December 20, 2002.

On December 23, 2002, Mr. Delancy filed a timely notice of appeal. On that same day, he filed a petition in this court requesting a stay of the proceedings in the trial court. We denied the petition on December 27, 2003. The parties now stipulate that Mr. Delancy did indeed comply with the injunction and had the elk slaughtered on or before December 31, 2002. On appeal, Mr. Delancy does not challenge the criminal convictions, but instead raises two points of error. First, he asserts that the trial court erred in granting the injunction. Second, he suggests that the trial court erred in not awarding payment of just compensation under Article 2, § 22 of the Arkansas Constitution.

As a threshold matter, the State contends that Mr. Delancy's argument with respect to the injunction is moot. As a general rule, the appellate courts of this state will not review issues that are moot. *Cotten v. Fooks,* 346 Ark. 130, 55 S.W.3d 290 (2001). To do so would be to render advisory opinions, which we will not do. *Id.* Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.* This court has recognized two exceptions to the mootness doctrine. *Id.* The first one involves

issues that are capable of repetition, yet evade review, and the second one concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id*.

In this case, the circuit court initially granted an injunction on November 1, 2002, that required Mr. Delancy to remove the elk from the State of Arkansas and enjoined him from future importation of wildlife into Arkansas unless he obtained the appropriate permits from the Arkansas Game and Fish Commission. On December 3, 2002, after finding that Mr. Delancy had failed to remove the elk, the circuit court amplified its injunction to require Mr. Delancy to either remove the elk or have the elk slaughtered by December 31, 2002; otherwise, state officials would be authorized to seize and slaughter the elk at his expense. Mr. Delancy filed a petition in this court on December 23, 2003, seeking a stay of the proceedings in the circuit court. We denied that petition on December 27, 2003. The parties agree that on or before December 31, 2002, Mr. Delancy had the elk slaughtered.

■ Compliance with the circuit court's injunction is a foregone conclusion. Any opinion by this court would have no practical legal effect upon a now-existing legal controversy. Thus, the mootness doctrine is applicable. Nonetheless, we hold that this case falls within an exception to our mootness doctrine in that it is capable of repetition and yet would evade review. We recognize that there will be similar situations in which the State seeks an injunction that calls for the immediate removal or slaughter of animals that are potentially infected with a contagious disease. Because the threat of a contagious disease spreading among wildlife is immediate, cases of this nature will likely escape review. We conclude that it is appropriate to reach the merits of this case.

■ For his first point on appeal, Mr. Delancy contends that there was insufficient evidence to support the entry of an injunction due to the State's failure to prove irreparable harm. This court reviews injunctive matters *de novo. Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001). The decision to grant or deny an injunction is within the discretion of the trial judge. *Id*. We will not reverse the judge's ruling granting or denying an injunction unless there has been an abuse of discretion. *Id*. When considering an order that grants or denies an injunction, we will not delve into the merits of the case further than is necessary to determine whether the lower court exceeded its

discretion. *Id.* We have explained that the sole question before us is whether the trial court departed from the rules and principles of equity in making its order, and not whether we would have made the order. *Id.; see also Villines v. Harris,* 340 Ark. 319, 11 S.W.3d 516, 519 (2000). In reviewing the lower court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *United Food and Commercial Workers, Intern. Union v. Wal Mart Stores, Inc.,* 353 Ark. 902, 120 S.W.3d 89 (2003).

■ ■ To establish sufficient grounds for a permanent injunction, the movant must show (1) that it is threatened with irreparable harm; (2) that this harm outweighs any injury which granting the injunction will inflict on other parties; (3) a likelihood of success on the merits; and (4) that the public interest favors the injunction. *United Food and Commercial Workers, Intern. Union v. Wal Mart Stores, Inc., supra.* Irreparable harm is the touchstone of injunctive relief. *Id.* Harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Id; Dawson v. Temps Plus, Inc.,* 337 Ark. 247, 987 S.W.2d 722 (1999) (citing *Arkansas Wildlife Federation v. Bekaert Corp.,* 791 F.Supp. 769 (W.D.Ark.1992)). Mr. Delancy focuses his argument on the evidence to support the lower court's conclusion that the State of Arkansas was threatened with irreparable harm.

The trial court's order granting the permanent injunction stated in pertinent part:

> At the time of the trial, the Arkansas Game and Fish Commission did not have information regarding the origin of all of the elk Defendant transported into Arkansas nor did it have proof of veterinary inspections on all of the elk transported into Arkansas by Defendant. The Arkansas Game and Fish Code requires that this information be furnished prior to the elk being transported into Arkansas.
>
> The State has met its burden of proof for the issuance of a permanent injunction by showing the risk of the transmission of disease, especially Chronic Wasting Disease (CWD), to Arkansas animals and wildlife from the elk which Defendant has in the State of Arkansas.
>
> In response to outbreaks of CWD in other states many states, including neighboring states Missouri and Texas, have recently

adopted measures severely restricting or banning the importation of deer or elk into those states. Since the filing of the petition herein, the Arkansas Game and Fish Commission has adopted Arkansas Game and Fish Code regulation § 15.18 which states that:

> "It shall be unlawful to import, ship, transport, or carry into the state by any means any live member of the cervidae family, including but not limited to white-tailed deer and elk."

Mr. Delancy does not contest that CWD is a tangible threat; instead, he contends that the State failed to prove any link between his herd and CWD. He specifically asserts that "[w]ithout this causal link, the trial court's decision to enter the injunction was an abuse of discretion." Apparently, Mr. Delancy would require the State to have "some type of measurable evidence that his herd was diseased."

We conclude that there is ample evidence to support the injunction. Specifically, the elk were in the State as a result of Mr. Delancy violating three provisions of the AGFC Code. Mr. Delancy failed to produce records of origin for any of the elk. Thus, the AGFC was unable to verify the elk's date of acquisition, place of origin, or name, address and telephone number of the seller. Furthermore, the danger of CWD and its corollary effect on wildlife was real and imminent. Indeed, Mr. Delancy testified that some of the elk had passed through Texas, and he thought that one of the bull elks originally came from Wyoming. The State introduced evidence that Wyoming has reported CWD in elk herds. In addition, the court considered that when CWD is detected, animals subject to the disease must be quarantined and destroyed to prevent further spreading. According to an article in the 2002-03 Arkansas Hunting Regulations Guide, a positive diagnosis of CWD in Warren might require extermination of all white-tailed deer from Pine Bluff to El Dorado to Camden. Furthermore, there was evidence that at least one of Mr. Delancy's elk had escaped from his compound where it could have come in contact with the free ranging white-tailed deer of Arkansas.

The testimony at trial revealed that, unfortunately, the only way to test for CWD was by post-mortem testing of the animal brain tissue. The court was presented with facts that demonstrated a real and imminent threat of the transmission of CWD. That threat entailed the possible destruction of all white-

tailed deer living in a large portion of Arkansas. Under these circumstances, we cannot say that the trial court abused its discretion.

## II. Just Compensation

■ For his second point on appeal, Mr. Delancy contends that the trial court erred in failing to award payment of just compensation for the taking of his elk under Article 2, § 22, of the Arkansas Constitution. Mr. Delancy failed to preserve this point on appeal because he failed to obtain a ruling on it from the trial court. At trial, Mr. Delancy forwarded a brief to the court in support of his response to the State's petition for an injunction. In that brief, Mr. Delancy argued that an injunction amounted to a taking of property without the payment of just compensation in violation of Article 2, § 22, of the Arkansas Constitution and that he was entitled to just compensation for the value of his elk if the court issued the injunction. After the court granted the injunction, Mr. Delancy did not renew his claim for just compensation or request that the court rule on his claim. The record does not reflect that the court ever made a ruling on the issue. We have repeatedly held that a party's failure to obtain a ruling is a procedural bar to consideration of the issue on appeal. *Bell v. Bershears,* 351 Ark. 260, 92 S.W.3d 32 (2002).

Affirmed.