STATE of Arkansas *v.* James C. FUDGE

CR 04-83                                            206 S.W.3d 850

Supreme Court of Arkansas
Opinion delivered April 14, 2005

[Rehearing denied May 26, 2005.]

*Mike Beebe*, Att'y Gen., by: *Jeffrey A. Weber* and *Clayton K. Hodges* , Ass't Att'ys Gen., for appellant

*Montgomery, Adams & Wyatt, PLC,* by: *Dale E. Adams,* for appellee.

JIM GUNTER, Justice. James C. Fudge was convicted of capital murder in the death of his wife, Kimberly Fudge, and was sentenced to death. We affirmed the conviction and sentence in *Fudge v. State,* 341 Ark. 759, 20 S.W.3d 315 (2000). Fudge then filed a Rule 37 petition requesting post-conviction relief, which was denied by the circuit court. On appeal, we reversed and remanded for further findings of fact and conclusions of law on certain issues related to Fudge's ineffective-assistance-of-counsel claim. *See Fudge v. State,* 354 Ark. 148, 120 S.W.3d 600 (2003). On remand, the circuit court issued an amended order denying all of Fudge's claims except for one. The court agreed with Fudge's claim that his penalty-phase counsel, Tammy Harris, was ineffective for failing to object to evidence of a purported prior conviction for first-degree battery, which was used by the State as evidence of an aggravating circumstance. Accordingly, the circuit court granted Fudge a new sentencing hearing. The State appeals, and Fudge cross-appeals.

Justice Glaze, Justice Dickey, and I would reverse on appeal and affirm on cross-appeal. Chief Justice Hannah and Justice Corbin would affirm on appeal and affirm on points B, C, D, and E on cross-appeal, but would not address point A on cross-appeal for reasons stated in Chief Justice Hannah's opinion. Justice Imber would affirm on both the appeal and the cross-appeal. Justice Brown would remand the case on appeal for additional findings of fact and conclusions of law and would affirm on cross-appeal. Therefore, our disposition is to affirm the trial court's findings on both the appeal and the cross-appeal.

We will not reverse the trial court's decision granting or denying post-conviction relief unless it is clearly erroneous. *Dansby v. State,* 350 Ark. 60, 84 S.W.3d 857 (2002). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.; Davis v. State,* 345 Ark. 161, 44 S.W.3d 726 (2001).

Both parties argue that the circuit court's decision granting relief in part and denying relief in part on the basis of ineffective assistance of counsel was clearly erroneous. Therefore, it is important in reviewing both the appeal and the cross-appeal to set forth the standard for determining whether counsel's assistance was

ineffective. To prevail on a claim of ineffective assistance of counsel, Fudge must prove two things: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Proof on component one requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.; Weaver v. State,* 339 Ark. 97, 3 S.W.3d 323 (1999). Proof on component two requires a showing that counsel's errors were so serious as to deprive Fudge of a fair trial, a trial whose result is reliable. *Id.* This means that there is a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

In making its determination, the court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Noel v. State,* 342 Ark. 35, 26 S.W.3d 123 (2000). That is, the petitioner must overcome the presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.' *See Michel v. Louisiana,* supra, 350 U.S., at 101, 76 S. Ct., at 164." *Strickland,* 466 U.S. at 689. If it is determined that counsel's performance was indeed deficient, this does not end the ineffective-assistance inquiry. Petitioner must prove the deficient performance prejudiced his defense. *Id.* at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* at 693. When a death sentence is being challenged, the petitioner must show that there is a reasonable probability that, absent the counsel's errors, the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. With these standards in mind, I turn to the allegations of ineffective assistance raised on appeal.

### I. State's Appeal

The State's sole argument on appeal is that the circuit court erred by ruling that Fudge's trial counsel was ineffective for failing to object to the introduction of State's Exhibit 56, evidence regarding a purported first-degree battery conviction. The circuit court granted post-conviction relief on this claim, holding as follows:

> [W]here the jury in a capital case was presented wrongly with evidence that the petitioner was previously convicted of the crime

of battery in the first degree, when, in fact, the petitioner had only been convicted of robbery, a less violent offense, the failure to object to the introduction of such evidence, even where the exhibit thereto was not presented to the jury, constitutes representation deficient enough in a death-penalty case that it constitutes ineffective assistance of counsel and, indeed, denied this petitioner the constitutional right to counsel under the Sixth Amendment to the United States Constitution. *Strickland, supra.*

• • •

To allow the jury deliberating on sentencing in a death-penalty case to believe that the defendant previously has been convicted of the violent offense of battery in the first degree, when that is not the case, is so prejudicial as to warrant reconsideration in a new sentencing hearing.

In order to impose a sentence of death for capital murder, the jury must find beyond a reasonable doubt that at least one aggravating circumstance exists. Ark. Code Ann. § 5-4-603 (Repl. 1997). The aggravating circumstance that the State presented to the jury in this case was that Fudge had been convicted of several prior felonies "an element of [each of] which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person." *See* Ark. Code Ann. § 5-4-604(3) (Supp. 2003). The evidence introduced to support this aggravating circumstance was State's Exhibits Nos. 56, 57, and 58. These exhibits were never shown to the jury, but were simply read by the State's counsel to the jury as follows: (1) Exhibit 56 shows Fudge was convicted of battery in the first degree; (2) Exhibit 57 shows Fudge was convicted of two counts of terroristic threatening; and (3) Exhibit 58 shows Fudge was convicted of two counts of terroristic threatening.

Fudge does not dispute the admission into evidence — or the recitation to the jury regarding such admission — of either Exhibit 57 or Exhibit 58. Fudge argues that the recitation of Exhibit 56 was incorrect. He claims that the references to first-degree battery in Exhibit 56 do not amount to proof beyond a reasonable doubt that he was convicted of first-degree battery. He argues that the judgment in Exhibit 56 shows only that he was convicted of robbery. Therefore, he claims that his counsel's failure to object to the introduction of evidence of a first-degree-battery conviction constituted ineffective assistance of counsel. The circuit court agreed and granted Fudge a new sentencing

hearing. I would hold that the circuit court's finding of ineffective assistance of counsel on this issue is clearly erroneous. Accordingly, I would reverse.

Exhibit 56 consists of four documents. The first document is a felony information charging Fudge with two crimes: count one — aggravated robbery; and count two — first-degree battery. The second document is a plea statement, stating that Fudge pleaded guilty on the charges of robbery and first-degree battery. Next, a criminal-docket sheet contains notes indicating that count one was reduced from aggravated robbery to robbery, the plea of not guilty was withdrawn, and a plea of guilty was entered. The docket sheet also states that the defendant was sentenced to eight years on each count concurrent with each other. Finally, the judgment and commitment order indicates that the State reduced the charge to robbery, and that Fudge withdrew a previous plea of not guilty and entered a plea of guilty. There is no specific mention made of count two, the first-degree battery charge, in the judgment and commitment order. However, it states that "the Court doth sentence and commit defendant to [eight] years imprisonment in the State Penitentiary on each count to run concurrent with each other." Whether Fudge was convicted of first-degree battery is not the issue before us. The issue is whether, under the facts and circumstances of this case, Ms. Harris's conduct constituted ineffective assistance of counsel. I would hold that it did not.

Fudge's penalty-phase counsel, Ms. Harris, testified in the Rule 37 hearing that Fudge admitted to her that he had been convicted of first-degree battery. She testified that Fudge was shown all of the exhibits — that is, Exhibits 56, 57, and 58 — and that he said he "had" those convictions. Ms. Harris further testified that, having previously reviewed Exhibit 56, she believed the judgment and docket sheet were sufficient to establish that Fudge was convicted of battery. She explained this in the Rule 37 hearing as follows:

> Q [Fudge's counsel]: . . . Did the fact that Mr. Fudge may have admitted to you that he'd been convicted of battery play a role in whether or not to challenge this aggravating circumstance?
>
> A: We showed him all — he was shown all of the exhibits. As we went through each one, he said that he had those convictions. And the felony information shows that there was an

eight — he got eight years on count — on each count, count one being the robbery and count two being the battery first in this particular case.

• • •

Q [Fudge's counsel]: You believe that the judgment on state's exhibit fifty-six is sufficient to establish —

A: Yes.

Q: — that Mr. Fudge was convicted of battery?

A: The judgment and the docket sheet, yes.

Q: Did it ever cross your mind that it might not be sufficient?

A: No. I mean we'd reviewed them before.

• • •

Q [State's counsel]: If you would look, Miss Harris, for a moment there at, I think, what's marked as state's exhibit fifty-six for just a moment.

A: Okay.

Q: I'll let you hang onto that, if I may. Isn't it true, Miss Harris, that there were about four or five documents that were all part of state's exhibit fifty-six?

A: Yes.

Q: And isn't it true that within those dockets there's the felony information, which originally Mr. Fudge was charged with aggravated robbery and first degree battery?

A: Yes.

Q: And then there is the judgment and commitment report which shows that he was convicted. And I think it may reference only the robbery; but it does denote convicted on both counts. Correct?

A: Yes. The typewritten information says eight years on each count to run concurrent with each other.

Q: And I think also the Court's docket sheet, which was part of that exhibit, reflects a plea on both counts, does it not?

A: Yes.

Q: And, also within there, there is a plea statement that was executed by Mr. Fudge himself which shows him pleading to both robbery and battery in the first degree?

A: That's correct.

Q: Okay. So, this wasn't simply an issue of that the only exhibit was a judgment and commitment that was — that was at issue. Is that correct?

A: Right. There were — these — these four pages made up that exhibit.

Q: Okay. And you said you did discuss with Mr. Fudge the fact that he did have that conviction?

A: Yes.

Q: Okay. Again, given those four exhibits, was that part of your consideration? When you look at those as a total — in total proof prove beyond a reasonable doubt that he was convicted of first degree battery?

A: Yes.

Those who would affirm on appeal state that it is improper for this court to base a decision to reverse on arguments not raised by the State. The argument they claim was not raised by the State is that it was reasonable for Ms. Harris not to object to the first-degree battery conviction, that is, the deficient-performance prong of *Strickland*. While the State's argument on appeal focuses on the prejudice prong of *Strickland*, the State brought this appeal arguing that Ms. Harris's failure to object to Exhibit 56 was not ineffective assistance of counsel. I agree. The State's focus on the prejudice prong in its appeal might be due to the circuit court's

mistaken conclusion in its initial order denying post-conviction relief that "[t]he State concedes that the first-degree battery charge was reduced to robbery." *See Fudge v. State*, 354 Ark. 148, 120 S.W.3d 600 (2003). This finding is not supported by the record.[1] In its testimony presented during the Rule 37 hearing, in its closing argument, and in its brief in response to Fudge's post-conviction relief petition, the State consistently argued that Exhibit 56 proved Fudge was guilty of first-degree battery and that counsel was not ineffective on this point. The circuit court's finding that the State conceded the battery charge was reduced to robbery is simply a mistake. Therefore, any finding of ineffective assistance based on that mistake is clearly erroneous. On a more important note, the State cannot concede the ultimate issue of law, that is, that counsel was ineffective. *See, e.g., State v. Knighten*, 109 Wash. 2d 896, 748 P.2d 1118 (1988)(holding court was not bound by State's erroneous concession that no probable cause existed, because it concerned a question of law, not fact).

Under *Strickland*, our review must be highly deferential to counsel's performance. *Strickland*, 466 U.S. at 689.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Id.*

---

[1] We will not reverse a circuit court's decision granting or denying post-conviction relief unless the decision is clearly erroneous. *Dansby v. State*, 350 Ark. 60, 84 S.W.3d 857 (2002). A finding is clearly erroneous when, although there is evidence to support it, the appellate court *after reviewing the entire evidence* is left with the definite and firm conviction that a mistake has been committed. *Id.* (emphasis added); *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001).

I now turn to the *Strickland* principles governing this case. With respect to the performance component, the inquiry must be whether Ms. Harris's assistance "was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The Supreme Court intentionally declined to provide detailed guidelines for determining whether counsel's performance was reasonable in a particular case, explaining as follows:

> [t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Id.* at 690.

The reasonableness of counsel's actions may be substantially influenced by the defendant's own statements, 466 U.S. at 691, in this case, Fudge's admission to Ms. Harris that he had been convicted of first-degree battery. When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless, counsel's failure to pursue those investigations may not later be challenged as unreasonable. *Id.* "In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions[.]" *Id.*

Fudge told Ms. Harris that he had pleaded guilty to and been convicted of first-degree battery, in addition to numerous other crimes. She reviewed Exhibit 56 with that fact in mind. While I am not here to determine the sufficiency of Exhibit 56 with regard to whether it constitutes a conviction of first-degree battery, I would determine whether Ms. Harris's actions in not objecting to this exhibit were objectively reasonable "considering all the circumstances." *Id.* at 688. Could Ms. Harris have further investigated this exhibit and its validity? Yes. Is it possible that another defense attorney would have chosen to object to the introduction of Exhibit 56? Yes. Was Ms. Harris ineffective under *Strickland* for failing to do this? No. "There are countless ways to provide effective assistance in any given case." *Id.* Considering all of the

circumstances of this case and the "wide range of reasonable professional assistance" presumed under *Strickland*, I would hold that Ms. Harris's determination with regard to Exhibit 56 was the result of reasonable professional judgment.[2]

While *Strickland* does not require us to examine the prejudice component in light of our determination on the performance component, even assuming Ms. Harris's conduct was unreasonable, Fudge did not suffer prejudice sufficient to warrant a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. 698 (holding that there is no reason for a court to address both components if the petitioner makes an insufficient showing on one).

With respect to the prejudice component, in addition to Exhibit 56, there were two other exhibits introduced to support this aggravating circumstance: (1) Exhibit 57 shows Fudge was convicted of two counts of terroristic threatening; and (2) Exhibit 58 shows Fudge was convicted of two counts of terroristic threatening. Therefore, Fudge was sentenced on the basis of five violent felonies. This is not a case in which the challenged felony is the only one introduced. The argument that one felony should not have been introduced still leaves four to support this aggravating circumstance. Given the overwhelming number of violent felonies, I would hold that Fudge has failed to prove that if Exhibit 56 had been excluded, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 694.

I would hold that the circuit court's finding of ineffective assistance of counsel on this issue is clearly erroneous, and I would reverse.

GLAZE and DICKEY, JJ., join in this opinion.

## II. Cross-appeal

On cross-appeal Fudge argues that the circuit court clearly erred in holding that there was no ineffective assistance of counsel with regard to the following claims: (1) trial counsel's failure to

---

[2] *See Florida v. Nixon*, 125 S. Ct. 551 (2004) (holding that defense counsel's failure to obtain defendant's express consent to a concession of murder did not automatically render counsel's performance deficient). There is no presumption of deficiency or prejudice under *Strickland* even to a concession of guilt on the capital-murder charge itself; the question is did counsel's representation fall below "an objective standard of reasonableness?" *Id.* at 555. Counsel's concession of defendant's guilt "does not rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary.' " *Id.* at 562.

investigate and present evidence of mitigation; (2) trial counsel's failure to include federal grounds in his motion for directed verdict, thereby foreclosing Fudge's opportunity to present the claim in a federal *habeas corpus* proceeding; (3) trial counsel's failure to investigate and present evidence in support of the motion to prohibit the use of voter-registration records to select the jury panel; (4) appellate counsel's failure to argue that Fudge's statement to Portland, Oregon, police should have been suppressed; and (5) trial counsel's failure to move for a mistrial or seek other remedial measures to rectify the State's continuous pattern of improper questioning of witnesses. We affirm.

### A. Failure to Investigate and Present Evidence of Mitigation

Fudge contends that his penalty-phase trial counsel, Tammy Harris, was ineffective for failing to investigate and present the following evidence of mitigation: (1) Fudge's history of alcoholism and drug addiction; (2) the history of alcoholism in Fudge's family; (3) the physical abuse Fudge suffered at the hands of his mother as a child; (4) the history of violence in Fudge's family, specifically that of his father, grandfather, and uncle; and (5) evidence of positive attributes, including Fudge's attempts to better himself in prison and his talents as a poet, artist, sculptor, and automotive-body repairman. Pursuant to our remand for further findings of fact and conclusions of law on the issue of these mitigating factors and the appropriate investigation thereof, *see Fudge v. State*, 354 Ark. 148, 120 S.W.3d 600 (2003), the circuit court held that counsel's decision not to present these additional mitigating factors was not ineffective assistance of counsel, but a matter of trial strategy. We agree.

In *Strickland*, the Supreme Court addressed how much investigation of mitigating evidence counsel was required to perform to constitute reasonable professional assistance. The Court stated that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-691. In *Williams v. State*, 347 Ark. 371, 64 S.W.3d 709 (2002), we stated that every effort must be made to eliminate the distorting effects of hindsight and to evaluate counsel's performance by looking from counsel's perspective *at the time*. "[H]indsight has no place in a review of effective assistance of counsel." *Williams, supra.*

In support of his claim, Fudge refers us to the United States Supreme Court's decision in *Wiggins v. Smith*, 539 U.S. 510 (2003). In *Wiggins*, the defendant was convicted of murder and sentenced to death. During post-conviction proceedings, the defendant claimed that counsel failed to investigate and present mitigating evidence of defendant's dysfunctional background, which included extreme physical and sexual abuse. *Id.* at 516. Counsel argued that, as a matter of trial tactics, he decided to focus on retrying the factual case instead of investigating and introducing mitigating evidence during the sentencing phase. *Id.* at 517. The Maryland Court of Appeals affirmed the trial court's denial of relief, holding that counsel's decision not to investigate was a matter of trial tactics. *Id.* at 518. The Supreme Court reversed, holding that "[g]iven both the nature and the extent of the abuse petitioner suffered, we find there to be a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing in an admissible form." *Id.* at 535.

In *Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000), we held that trial counsel's failure to investigate mitigating circumstances and present such evidence during the penalty phase constituted ineffective assistance of counsel. In *Sanford*, as in *Wiggins*, counsel conducted virtually no investigation regarding mitigation evidence. The potential mitigation petitioner argued should have been investigated and introduced included long-standing mental retardation, his age of sixteen at the time of the murder, medical records of head injuries, a family history of mental retardation, and jail records reflecting commendations. In finding there was ineffective assistance, we approved of the Eighth Circuit's reasoning from *Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir. 1983), stating "it is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case." *Sanford, supra.* In *Pickens*, it was undisputed that counsel failed to make *any* investigation at all. The court recognized that counsel

> may choose not to investigate all lines of defense and may concentrate, for reasons of sound strategy, on another possible line of defense. We would not fault such a strategy if it were a reasoned choice based on sound assumptions. That is not the situation here. Plant did no investigation into any possible mitigating evidence. He was left with no case to present. A total abdication of duty should never be viewed as permissible trial strategy.

*Pickens*, 714 F.2d at 1467 (citations omitted).

In contrast with *Wiggins, Sanford,* and *Pickens*, Fudge's counsel did investigate and made a tactical decision not to offer the information to the jury. The question before us is whether Ms. Harris did enough investigation to satisfy the test of reasonableness under *Strickland. Strickland,* 466 U.S. at 690-691. With regard to Fudge's and his family's history of alcoholism, Fudge's guilt-phase counsel, Brett Qualls, and Ms. Harris both testified that they and their investigator talked with members of Fudge's family and his friends and made a tactical decision not to present evidence of alcoholism. Ms. Harris said that she did not present the information to the jury because it was inconsistent with Fudge's defense of innocence to claim in the sentencing hearing that he killed his wife because he was an alcoholic. She felt it would compromise her credibility with the jury.

The only testimony regarding physical abuse of Fudge by his mother was from his Aunt Essierean Brown. She testified that Fudge's mother whipped him because she thought Fudge was bad. However, she then said that although we might call what his mother did to him abuse these days, it was called "chastising" in those days. Aunt Essierean did not consider it abuse, but a way of life. She testified that children were whipped when they did not do the right thing. Fudge offered no other evidence of abuse. In light of the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *Williams, supra,* we do not believe that counsel's failure to introduce this evidence of "abuse" constitutes deficient performance under *Strickland.*

The next potential mitigating factor Fudge argues should have been introduced is his family's history of violence. Fudge's father was allegedly convicted of three homicides, one involving his wife. His uncle was allegedly convicted of killing his girlfriend. At the Rule 37 hearing, Fudge introduced the testimony of Dr. Bradley Diner, a psychiatrist, to explain the detrimental effect this violence had on Fudge. Dr. Diner testified that it has not been

proven that there is a hereditary link between a child's propensity for violence and the violent nature of his father and uncle. However, he did state that he would expect for Fudge to grow up using violence to manage conflict, given the family history of violence.

Ms. Harris testified that she was aware of Fudge's father's criminal history. However, she stated that after learning about the homicides, she did not attempt to obtain additional criminal history on Fudge's father. She and Mr. Qualls made a decision, given Fudge's father's history, that he probably was not the best witness they could call on Fudge's behalf. She was afraid the jury would have seen that Fudge's father had been convicted of murder three times and was out on the street. In her opinion, evidence of a genetic link was too big of a risk to take. Her experience with this sort of family violence was that it did not go over well with juries; in this case, they thought the information regarding Fudge's father's violent history would do more harm than good.

Here, Ms. Harris investigated and made a tactical decision not to put on testimony of Fudge's violent family history. We have often said that matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. *Id.*

Finally, Mr. Qualls and Ms. Harris both knew about Fudge's alleged talents with regard to his artwork, sculpting, and auto-body work. Neither believed that this type of evidence was a good mitigator. Moreover, they were afraid that if they showed the jury what a good artist Fudge was, the State might then show pictures of the autopsy or crime scene and say "no, here's James Fudge's artwork[.]" Pictures of a car Fudge customized were not shown to the jury because the car had gun holsters built into it. Counsel chose not to introduce evidence regarding Fudge's job working in an auto-body shop, since the owner of the shop witnessed Fudge attack someone with a sledge hammer at the shop. Ms. Harris's decision not to introduce this mitigating evidence was a matter of trial strategy.

In this case, all of the mitigating evidence Fudge argues should have been introduced may or may not have had the effect of mitigation. We hold that Ms. Harris's actions with regard to

investigation and her decision not to introduce this evidence were both matters of trial strategy. Fudge's claim of ineffective assistance on this point is denied.

### B. Failure to Federalize Directed-Verdict Motion

After the State rested in the guilt phase of the trial, Fudge's counsel moved for a directed verdict on the grounds that the State had not presented sufficient evidence to prove either the identity of Kimberly Fudge's killer or premeditation and deliberation. In the alternative, counsel moved to reduce the charge to first-degree murder. Defense counsel renewed these motions after he rested. Fudge claims that counsel's failure to include federal grounds in his motion for directed verdict constituted ineffective assistance of counsel because it foreclosed Fudge's opportunity to present the claim in a federal *habeas corpus* proceeding.

The circuit court rejected this argument, relying on *Satter v. Leapley*, 977 F.2d 1259 (8th Cir. 1992), which held that a challenge to the sufficiency of the evidence was necessarily a due-process challenge under the federal constitution. Therefore, there was no counsel error. Moreover, we held in *Johnson v. State*, 356 Ark. 534, 187 S.W.3d 151 (2004), that failure to preserve an issue for federal *habeas* review is not the prejudice contemplated by the *Strickland* test, which requires a reasonable probability that the outcome at trial would have been different. Because Fudge has not proven that counsel was deficient or that Fudge was prejudiced, counsel was not ineffective.

### C. Failure to Investigate and Present Evidence in Support of Motion to Prohibit Use of Voter-Registration Records

Before trial, Fudge's counsel made a motion to prohibit the use of voter-registration records to select the jury panel on the grounds that African-Americans and women would be under-represented in violation of *Duren v. Missouri*, 439 U.S. 357 (1979). It was denied. Fudge argues that counsel should have attempted to compile evidence regarding the racial makeup of every jury venire in Pulaski County in support of this motion. Counsel's failure to do so, Fudge argues, constitutes ineffective assistance of counsel. In denying this claim, the circuit court relied on our holding in *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995), rejecting the argument that the use of a voter-registration list to select a jury panel is unconstitutional.

█ Moreover, Fudge offers nothing more than conclusory allegations that had counsel provided this information, the court would have granted his motion. Even if Fudge's counsel were to have shown that blacks were under-represented on his jury venire, Fudge must then have shown that the alleged misrepresentation of African-Americans was due to a systematic exclusion in the jury-selection system itself. *Lee v. State,* 327 Ark. 692, 942 S.W.2d 231 (1997)(citing *Duren v. Missouri,* 439 U.S. 357 (1979)). Where the venire is chosen using the random-selection process required by Ark. Code Ann. § 16-32-103 (Repl.1999), we have held that there is no possibility of a systematic or purposeful exclusion of any group. *Id.; Price v. State,* 347 Ark. 708, 66 S.W.3d 653 (2002). Fudge offered no evidence of purposeful exclusion. As Fudge has proved neither error nor prejudice, we affirm the circuit court's determination on this issue.

### D. *Failure to Argue on Appeal that Fudge's Statements to Oregon Police Should Have Been Suppressed*

Fudge was arrested in Portland, Oregon, pursuant to an arrest warrant issued in Pulaski County. According to Detective David Rubey of the Portland Police Department, Fudge was taken into custody, searched, and advised of his *Miranda* rights. Fudge then read and signed a copy of their standard *Miranda* constitutional-rights form. Fudge argues that the form was deficient, making his statement to Detective Rubey inadmissible. While trial counsel moved to suppress the statement, Fudge argues that his appellate counsel's failure to raise the issue on appeal constituted ineffective assistance of counsel.

We are required by Ark. Code Ann. § 16-91-113 to review all errors prejudicial to the rights of the appellant where either a sentence for life imprisonment or death has been imposed. To aid us in compliance with the statute, Ark. Sup. Ct. R. 4-3(h) requires an appellant in such a case to abstract all rulings adverse to him on all objections, motions, and requests made by either party. In Fudge's direct appeal to this court, we stated that "[i]n accordance with Ark. Sup. Ct. R. 4-3(h) (1998), the record has been reviewed for adverse rulings objected to by appellant James Fudge but not argued on appeal, and no reversible error was found." *Fudge v. State,* 341 Ark. 759, 20 S.W.3d 315 (2000).

█ We reviewed all errors, including the denial of Fudge's suppression motion, and implicitly found no reversible error. Since there was no reversible error, counsel was not ineffective for

failing to argue this point on appeal. Counsel cannot be found ineffective for failing to make an argument that has no merit. *See Monts v. State*, 312 Ark. 547, 851 S.W.2d 432 (1993). Because this issue was settled in Fudge's direct appeal, it is now the law of the case and cannot be reargued here. *See Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999); *Johnson v. State*, 356 Ark. 534, 157 S.W.3d 151 (2004).

### E. Failure to Seek a Mistrial For State's Pattern of Improper Questioning

Finally, Fudge claims that the State engaged in a pattern of improper questioning, including leading questions, questions calling for hearsay, compound questions, questions calling for speculative responses, irrelevant questions, and questions that had been asked and answered. Fudge contends that his trial counsel had a duty to stop this improper questioning by moving for a mistrial, and that his failure to do so constituted ineffective assistance of counsel. The circuit court disagreed, and so do we.

The circuit court held that the questions asked by the State did not rise to the level of misconduct for which a motion for mistrial should have been made, nor for which there was a remedy beyond sustaining the objection. A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Walker v. State*, 353 Ark. 12, 110 S.W.3d 752 (2003).

The following are examples of the "improper" questions: (1) the victim's daughter was asked how it made her feel to hear Fudge say that she would "never find" her mother; (2) the victim's mother was asked about telephone conversations she had with the victim and whether her daughter regularly kept track of what her children were doing; (3) the victim's neighbor was asked about her conversation with the victim regarding injuries the victim received at the hand of Fudge and when she had seen the victim on certain relevant dates; and (4) the Oregon detective was asked to testify about his contact with the Pulaski County Sheriff's Office, about conversations with Fudge regarding his use of the victim's car and whether he stole her keys, and about his conversations with Fudge regarding information he had obtained from a Pulaski County investigator. All were objected to by Fudge's

counsel and ruled upon by the trial court. These questions do not rise to such an egregious level as to warrant a mistrial. The circuit court's ruling on this issue was not clearly erroneous.

HANNAH, C.J., CORBIN, and IMBER, JJ., affirm on direct appeal.

GLAZE, DICKEY, and GUNTER, JJ., reverse on direct appeal.

BROWN, J., remands on direct appeal.

GLAZE, BROWN, IMBER, DICKEY, and GUNTER, JJ., affirm cross-appeal.

HANNAH, C.J., and CORBIN, J., reverse in part on cross-appeal.

JIM HANNAH, Chief Justice. ■ I agree with Justice Imber's disposition of the issue on direct appeal. I write to further emphasize that it is wholly improper for this court to base a decision to reverse on arguments never raised by the appellant. Rather than addressing the arguments before this court, three of my colleagues would go to the record and craft the State's argument in order to determine that counsel's performance was not deficient. "This court has been resolute in stating that we will not make a party's argument for that party or raise an issue, *sua sponte*, unless it involves the trial court's jurisdiction." *Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004).

As the appellee with respect to the first-degree battery issue, Fudge responded to the arguments raised by the State. Three of my fellow justices would have Fudge anticipate and provide a response to an argument that this court decides to raise on its own. Raising a ground for reversal *sua sponte* deprives Fudge of his right to be heard on this issue. *See Hanlin, supra.* This is unacceptable.

As to the cross-appeal, I disagree with the majority's decision to address Fudge's argument that his penalty-phase counsel was ineffective for failing to investigate and present evidence of mitigation. In the present case, the circuit court's decision to order resentencing is affirmed; therefore, Fudge is entitled to a new sentencing hearing. Fudge's first point on cross-appeal, that his *penalty-phase* counsel was ineffective for failing to investigate and present evidence of mitigation, should not be addressed because the point is moot.

As a general rule, the appellate courts of this state will not review issues that are moot. *Delancy v. State*, 356 Ark. 259, 151 S.W.3d 301 (2004). To do so would be to render advisory

opinions, which we will not do. *Id.* Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.; K.S. v. State*, 343 Ark. 59, 31 S.W.3d 849 (2000). This court has recognized two exceptions to the mootness doctrine. *Delancy, supra.* The first one involves issues that are capable of repetition, yet evade review, and the second one concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.* An analysis of what Fudge's penalty-phase counsel did in this sentencing hearing with regard to the investigation and presentation of mitigating evidence will have no practical legal effect upon this case, as it is already clear that Fudge will receive a new sentencing hearing.

Further, this case does not fall under one of the exceptions. Clearly, the issue of whether Fudge's penalty-phase counsel is ineffective is not an issue that is capable of repetition that evades review. Nor is the issue one that raises considerations of public interest which, if addressed, would prevent future litigation. When Fudge is resentenced, the penalty phase will begin anew. The State will have the opportunity to present evidence of aggravating circumstances, and Fudge will have the opportunity to present evidence of mitigating circumstances. After hearing all the evidence, the jury will make its determination. This court cannot anticipate what evidence will be presented at the resentencing hearing. Nor can this court anticipate Fudge's sentence or whether Fudge will raise future claims alleging that his penalty-phase counsel was ineffective in failing to investigate and present evidence of mitigation.

Here, Fudge will be resentenced; he has obtained the relief he sought. There is no controversy and, accordingly, rendering any decision on this issue is merely advisory. It is not the practice of this court to anticipate future litigation and issue advisory opinions. *Wright v. Keffer*, 319 Ark. 201, 890 S.W.2d 271 (1995). I would hold that Fudge's point on cross-appeal that his penalty-phase counsel failed to investigate and present evidence of mitigation is moot.

In sum, I believe that the circuit court should be affirmed on direct appeal. To the extent that Justice Imber's opinion agrees that the circuit court's order on direct appeal should be affirmed, I join that opinion. I disagree with the majority's decision to address Fudge's argument on cross-appeal that his penalty-phase counsel

was ineffective for failing to investigate and present evidence of mitigation. I join the majority with respect to the remaining issues on cross-appeal.

CORBIN, J., joins.

IMBER, J., joins on direct appeal.

ANNABELLE CLINTON IMBER, Justice. Although I agree with the opinion's[1] disposition of the issues on cross appeal, I must respectfully disagree with the position that the circuit court's order granting a new sentencing hearing should be reversed.

At the outset, the opinion correctly sets forth the standard that the defendant must satisfy to succeed on an ineffective-assistance-of-counsel claim. Fudge must prove (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The circuit court concluded that counsel's failure to object to the introduction of evidence from State's Exhibit 56 regarding a purported first-degree battery conviction "constituted representation deficient enough in a death-penalty case that it constitutes ineffective assistance of counsel" under *Strickland*. On appeal, the State makes no argument that counsel's performance was not deficient; rather, the State limits its argument to explaining why counsel's failure to object to Exhibit 56 did not result in any prejudice to Fudge's defense. Specifically, the State argues on appeal that the circuit court erred in granting Rule 37 relief because Exhibit 56 was admissible despite the jury being "misinformed that [Fudge's] conviction was for battery in the first degree." Alternatively, the State suggests that defense counsel's failure to object to the jury being "erroneously informed that [Fudge] had a conviction for first-degree battery" did not prejudice the defense because the State presented evidence of other prior violent felony convictions. Both of these arguments relate solely to the prejudice prong in *Strickland*. Yet, the opinion in large part hinges its conclusion that the circuit court's order should be reversed on the premise that counsel's conduct during the penalty phase was not deficient under the *first* prong of *Strickland* — an argument that the State never made on appeal. By doing so, the opinion advocates a *sua sponte* reversal on a ground not argued by the State.

---

[1] The "opinion" refers to the opinion written by Justice Gunter in which Justices Glaze and Dickey join.

■ We do not reverse on a ground that was not argued by the appellant because well-settled rules of this court state that arguments not made by appellants on appeal are deemed abandoned. *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000); *Hazen v. City of Booneville*, 260 Ark. 871, 545 S.W.2d 614 (1977); *Missouri Pac. R. Co. v. Harding*, 188 Ark. 221, 65 S.W.2d 20 (1933). The State, as the appellant here, did not address the first prong of *Strickland* on appeal. It failed to argue that counsel's performance was not deficient on either of two grounds: (1) the four documents contained in Exhibit 56 reasonably led counsel to believe that Fudge had a first-degree battery conviction; and (2) Fudge admitted that he had received all "those convictions." While such arguments concerning whether counsel's performance was in fact deficient under the first prong of *Strickland* may indeed have merit, we simply should not examine arguments that were never made by the appellant, much less reverse on grounds raised *sua sponte* by the court.

■ With respect to the prejudice prong, the opinion briefly concludes that Fudge's four prior convictions of terroristic threatening constitute an overwhelming number of violent felonies. On review, we will not reverse a trial court's decision granting post-conviction relief unless that decision is clearly erroneous. *Dansby v. State*, 350 Ark. 60, 84 S.W.3d 857 (2002). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* The opinion concludes that Fudge failed to prove that if Exhibit 56 had been excluded the result of the proceeding would have been different. However, based on our standard of appellate review, I cannot conclude that the circuit court erred in granting relief. Terroristic threatening, either in the first or second degree, is a crime that involves *threats* of injury. *See* Ark. Code Ann. § 5-13-301 (2004). However, the crime of battery in the first degree involves the infliction of serious physical injury. *See* Ark. Code Ann. § 5-13-201 (Repl. 1997). Despite Fudge's four prior convictions of terroristic threatening, the first-degree battery conviction was the only aggravator that included the *actual* infliction of serious physical injury. Without the first-degree battery conviction, I am not left with a definite and firm conviction that the circuit court committed a mistake when it granted a new sentencing hearing. Consequently, I would affirm the circuit court's order

on direct appeal and cross appeal. To the extent Chief Justice Hannah's opinion agrees that the court is reversing on grounds that the State never argued on appeal, I join his opinion.

HANNAH, C. J., and CORBIN, J., join in part.

ROBERT L. BROWN, Justice, concurring and dissenting. I would not simply affirm or reverse the circuit judge on the issue of ineffectiveness of counsel, but I would remand for additional findings of fact and conclusions of law.

This Rule 37 appeal is fraught with confusion and unanswered questions on the ineffectiveness point. At the core of my dilemma is the fact that the State has filed a brief that abstracts testimony and includes Exhibit 56 in the Addendum, all of which shows that defense counsel was correct in not objecting to the prosecutor's first-degree battery argument. Yet, the State in the argument part of its brief does not address this point but, rather, appears to agree with the circuit judge that defense counsel sat idly by while the prosecutor misinformed the jury of the battery conviction. Thus, we have a conflict in the State's abstracted testimony and Addendum on the one hand and its failure to argue and develop the ineffectiveness issue on the other. Moreover, in light of Exhibit 56 and the abstracted testimony, the circuit judge appears to have erred in finding (1) that Fudge was not convicted of first-degree battery, and (2) that the prosecutor conceded this point at the Rule 37 hearing.

The overarching issue facing this court today is whether we can correct what appears to be an erroneous finding by the circuit judge which led to his ineffectiveness finding when the State has failed to address that issue on appeal. Stated differently, can this court reverse the circuit judge for a mistaken finding concerning attorney error, when the State in its brief appears to agree with the circuit judge? The dissents in this matter conclude that this court is bound by the State's concession, even though that concession may well be in error. I disagree as I believe it is this court's role to decide whether defense counsel was ineffective, not the Attorney General's. Nevertheless, in order to resolve the conflict between the abstracted testimony and Exhibit 56 in the State's brief and the circuit judge's order, I would remand this matter for additional findings of fact and conclusions of law.

The conflict in this matter can be summarized as follows. From the abstracted testimony and Exhibit 56, it appears defense counsel was not ineffective. She reasonably believed Fudge had

been convicted of first-degree battery, because she testified that he told her this was the case. Furthermore, according to State's Exhibit 56, which consists of four pages, it appears that Fudge was, in fact, convicted of that offense, since he received an eight-year sentence for each count charged. One of the charges was first-degree battery. This was all made abundantly clear by the prosecutor who cross-examined defense counsel before the circuit judge at the Rule 37 hearing.

What has caused the problem in this case is that the circuit judge who sat on the Rule 37 matter found in his Amended Order granting resentencing that "the State concedes that the first-degree battery charged was reduced to robbery." But, again, that concession by the prosecutor is contradicted by the abstracted testimony and Exhibit 56. In fact, the prosecutor at the Rule 37 hearing took pains to emphasize that Fudge was convicted of first-degree battery. Accordingly, the judge's finding in his order appears to be in error.

The second problem in this case is that the State in its brief picks up on the circuit judge's finding and agrees that the jury was misinformed by the first-degree-battery argument at the original trial. This "misinformation" by the prosecutor apparently led the State to deemphasize ineffectiveness of counsel as an argument on appeal. Thus, the State leaps over the ineffectiveness prong of the *Strickland* test and concentrates only on whether Fudge was prejudiced by defense counsel's failure to object to the first-degree-battery reference.

Because this court is operating largely in the dark as to why there is this clear conflict between the abstracted testimony, Exhibit 56, and the circuit judge's order, I would remand for additional findings by the circuit judge to enlighten us on this matter. This would be the wiser and more prudent course before we decide whether to affirm or reverse the circuit judge's order.

Thus, I disagree with my fellow justices who dissent and who would simply affirm the circuit judge's order without further clarification. They argue that this court is *bound* by the State's failure to argue the ineffectiveness point. I disagree. Whether defense counsel was ineffective is a judicial determination and one of the ultimate issues to be decided by this court. An erroneous concession of that point by the State simply does not decide the issue. *State v. Knighten*, 109 Wash. 2d 896, 748 P.2d 1118 (1988) (State's erroneous concession of no probable cause to arrest did not bind the Washington Supreme Court).

I also disagree with those who would simply reverse the circuit judge because it seems clear to me that this court does not have all the pieces of the puzzle. Only the circuit judge, by making additional findings, can shed light on this dilemma. Once done, this court can then render its decision with a full awareness of the facts. This court has remanded Rule 37 matters in the past for additional findings of fact. *See, e.g., Greene v. State,* 356 Ark. 59, 146 S.W.3d 871 (2004) (court will remand death case under Rule 37.5 when trial court fails to make sufficient findings of fact and conclusions of law). This case cries out for such a remedy.

I also disagree with Justice Gunter's opinion on the prejudice prong but concur with his opinion in all other respects.

## SUPPLEMENTAL DISSENTING OPINION ON DENIAL OF REHEARING MAY 26, 2005

Том Glaze, Justice, dissenting. I would grant the State's request for rehearing based on the sound reasoning and legal authority set out in Justice Gunter's opinion. Any suggestion that the State *sua sponte* seeks reversal of the trial court's ruling declaring Fudge's attorney, Tammy Harris, was ineffective because of her failure to object to the introduction of Exhibit 56 (the first-degree battery conviction) is clearly wrong. The State's brief addressed this issue as follows:

> The State . . . requests the Court to reverse the circuit court's grant of relief because [Exhibit 56] was admissible. Moreover, even it if was not,[1] the grant of relief was clearly erroneous in that any deficient conduct in not objecting to State's Exhibit 56 did not result in any prejudice.

• • •

> In the present case, the circuit court ruled that the appellee's trial counsel was ineffective because she did not object to the introduction of State's Exhibit 56. The exhibit was introduced as

---

[1] Once this court concludes that Fudge's attorney's conduct was not deficient, the court's inquiry ends, and we need not address the second prejudice prong set out in *Strickland v. Washington,* 466 U.S. 668 (1994).

evidence of the sole aggravating circumstance that the appellee had "previously committed another felony, an element of which was the use or threat of violence to another person," and consisted of four documents, including a judgment that shows that the appellee had originally been charged with aggravated robbery, but pleaded guilty to robbery, it does not mention battery in the first degree. The exhibit also included a plea statement that shows that he was pleading guilty to both robbery and battery in the first degree. Despite the fact that the judgment did not mention first-degree battery, the circuit court ruled that robbery is a less violent offence than first-degree battery and, therefore, the appellee was prejudiced by the fact that the jury was improperly presented with evidence of a purported battery crime. The circuit court's decision to grant relief should be reversed.

• • •

There was no objection when the prosecutor made the error, and the appellee has made no claim that trial counsel was ineffective for not objecting to it. The claim upon which he obtained relief is based on the failure to object to the exhibit, but, as is explained above, the exhibit was inadmissible.

Although the State may not have made its deficiency argument on appeal as clear as Justice Gunter's opinion, the trial court rejected it below, and the State did address the argument on appeal. In short, Harris testified that Fudge admitted to her that he had been convicted of first-degree battery when Fudge was shown Exhibit 56. Harris said that the judgment *and* docket sheet established that Fudge was convicted of first-degree battery. The State appealed, arguing that, on these facts, Harris was not ineffective by choosing not to object to Exhibit 56. The trial court's finding that the State conceded the battery conviction had been reduced to robbery was clearly wrong. An attorney's conversation with the defendant may be critical to a proper assessment of counsel's investigation decisions. Here, Fudge admitted to Harris that he had been convicted; after Harris's review of the conviction judgment and docket sheet, sufficient reasons existed for Harris not to object to Exhibit 56's introduction into evidence.

The change, which I believe is necessary to Justice Gunter's opinion, is our having addressed the prejudice prong in *Strickland*, since I believe the conduct of Fudge's counsel in this case was not deficient. That portion of the opinion should be removed, so that no confusion will exist over whether prejudice is an issue that

needs to be addressed. Prejudice is not an issue in this case. *See Dansby v. State*, 347 Ark. 674, 66 S.W.3d 505 (2002) (where court concluded counsel's performance was not deficient, court held that it need not consider or address the prejudice prong of *Strickland*).

DICKEY, J., joins this opinion.